**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Bill Lee CUMMINGS, etc., Defendant-**
**Appellant.**

**No. 72-1369.**

United States Court of Appeals,
Ninth Circuit.

Oct. 10, 1972.

Annette Quintana (argued), Las Vegas, Nev., for defendant-appellant.

Daniel E. Ahlstrom, Asst. U. S. Atty. (argued), Alan B. Andrews, Asst. U. S. Atty., Joseph L. Ward, U. S. Atty., Las Vegas, Nev., for plaintiff-appellee.

Before DUNIWAY, CARTER and GOODWIN, Circuit Judges.

DUNIWAY, Circuit Judge:

Cummings, the owner and operator of B & N Pharmacy in Las Vegas, Nevada, stands convicted on all counts of a three-count indictment returned on August 3, 1971. Count I charged failure to keep accurate records of his retail sales of the drug tuinal, in violation of 21 U.

S.C. §§ 360a(d)(1) and 331(q)(4); Count II charged failure to prepare and keep accurate records of his retail sales of the exempt narcotic Robitussen A.C., in violation of 26 C.F.R. § 151.424 and 26 U.S.C. § 7203; Count III charged failure to keep accurate records of his retail sales of the drug seconal, in violation of 21 U.S.C. §§ 360a(d)(1) and 331(q)(4). We reverse and remand for a new trial.

This case arises from the following facts. On April 22, 1971, Ronald Hodson, a Pharmaceutical Inspector for the Nevada State Board of Pharmacy, along with Agents Harlan Bowe and Samuel Ozment of the Federal Bureau of Narcotics and Dangerous Drugs, and Detective Lemmie Burks of the Las Vegas Police Department, entered Cummings' pharmacy to conduct an in-depth compliance investigation pursuant to a search warrant.

The investigation revealed substantial shortages of the exempt narcotic and the two drugs named in the indictment, shortages not accounted for in any records.

**1. *The Drug Abuse Prevention and Control Act of 1970.***

■ Cummings contends that his prosecution was not brought within the time limited by the savings clause in the Comprehensive Drug Abuse Prevention and Control Act of 1970 (the Act), Act of October 27, 1970, Pub.L.No. 91–513, 84 Stat. 1242, and that his conviction must therefore fall for lack of a valid statute to sustain it. If he is right, the indictment should be dismissed, at least as to Counts I and III.

With the exception of 26 U.S.C. § 7203,[1] which is the basis for Count II, all of the statutes upon which the indict-

ment is based were repealed by the Act, Pub.L.No. 91–513, §§ 701, 1101, 84 Stat. 1281, 1291, which under § 704(a) became effective on May 1, 1971, after the conduct on which the indictment rests, but before it was returned. The statutory provisions and regulations relied upon in the indictment were repealed as of that date. United States v. Fiotto, 2 Cir., 1972, 454 F.2d 252, 255.

However, 1 U.S.C. § 109 provides:

"The repeal of any statute shall not have the effect to release or extinguish any penalty, forfeiture, or liability incurred under such statute, unless the repealing Act shall so expressly provide, and such statute shall be treated as still remaining in force for the purpose of sustaining any proper action or prosecution for the enforcement of such penalty, forfeiture, or liability. . . ."

Sections 702 and 1103 of the Act provide:

### "PENDING PROCEEDINGS

"(a) Prosecutions for any violation of law occurring prior to the effective date of Section 1101 shall not be affected by the repeals or amendments made by such section or section 1102, or abated by reason thereof.

"(b) Civil seizures or forfeitures and injunctive proceedings commenced prior to the effective date of section 1101 shall not be affected by the repeals or amendments made by such section or section 1102, or abated by reason thereof."

The question becomes whether Cummings' prosecution was saved by these provisions. Cummings argues that it was not because Sections 702(a) and 1103(a) explicitly require that the *pros-*

---

1. The government argues that since Section 7203 was not repealed by the Drug Control Act, Cummings' contention need not even be considered as to Count II. Cummings counters with the argument that 26 C.F.R. § 151.424 has been taken out of the Code of Federal Regulations as a result of the passage of the Drug Control Act, and that the general penalty provision embodied in Section 7203 is not sufficient by itself to sustain Count II of the indictment. Because of the conclusion we reach as to Cummings' first contention, we need not decide the question whether Section 7203 could by itself sustain Count II.

*ecution* occur prior to May 1, 1971, in order to be saved. We do not agree. The subsections do not say that a *prosecution* must occur prior to the effective date or be barred, but only that the *violation of law* on which the prosecution is based must have occurred prior to the effective date. *See generally* Williams v. United States, S.D.N.Y., 1971, 334 F. Supp. 669, n. 1. This is the only reasonable interpretation of the language of the subsections.

Moreover, the conduct prohibited by the provisions cited in the indictment remained the subject of civil and/or criminal penalties under the Act. *See generally* §§ 301–411, 84 Stat. 1253–70. Thus, under both the new and old statutes, it was Congress' intent to discourage the conduct charged in the indictment by making it the subject of civil and/or criminal penalties. Yet Cummings' construction of Sections 702(a) and 1103 (a) would free from all punishment those individuals who committed violations of the old statutes prior to the effective date of the Act, but whose prosecutions had not yet begun. In view of Sections 301 through 411 of the Act, we cannot believe that Congress intended to create such a category.

None of Cummings' arguments or cited authority requires a contrary conclusion. Cummings argues that Sections 702 and 1103 are entitled "Pending Proceedings," and that this means Congress intended to save only pending prosecutions. If anything, however, Cummings' argument serves to distinguish prosecutions, because the word "proceedings" is not mentioned in Sections 702(a) and 1103(a), but only in Sections 702(b) and 1103(b). A comparison of subsections (a) and (b) shows that, in (b) Congress dealt with proceedings commenced before May 1, while in (a) it dealt with violations, not prosecutions, occurring before May 1. The difference in language is significant and supports our construction of (a).

Nor do the cases Cummings relies upon aid him. See Hamm v. City of Rock Hill, 1964, 379 U.S. 306, 85 S.Ct.

384, 13 L.Ed.2d 300; Bell v. Maryland, 1964, 378 U.S. 226, 84 S.Ct. 1814, 12 L. Ed.2d 822. Both *Hamm* and *Bell* involved prosecutions for a civil rights "sit-in," and the Court found that the legislature's subsequent adoption of a civil rights act "substitute[d] a right for a crime," and that the criminal prosecutions should therefore abate. No such intent can be imputed to Congress here; the conduct proscribed by 21 U.S. C. §§ 331(q) and 360a(b) is also the subject of civil and/or criminal penalties under the Act. Compare Pipefitters Local Union No. 562 v. United States, 1972, 407 U.S. 385, 92 S.Ct. 2247, 33 L. Ed.2d 11 (1972).

2. *Improper argument by the prosecutor.*

█ In his closing argument to the jury, government counsel made the following argument, in response to defense counsel's vigorous attack upon the government's evidence:

"Ladies and gentlemen, I don't know if you've ever thought about how a matter gets before you in Court. What are the procedures that go into getting a case before a judge and jury? There is a system of checks and balances within the department—

"MR. FARKAS [defense counsel]: Your honor, I must object to this.

"THE COURT: Be seated.

"MR. ANDREWS: —within the Department of Justice. Let's take this case, for example: Agent Bowe, Inspector Hodson.

"Now, Inspector Hodson is not a federal employee, so I would be dealing with Agent Bowe. Agent Bowe, if he feels after a complete investigation that a crime has been committed, he checks with his superiors, he reviews the case with them. They can say 'No, we don't feel it should go forward.' If they do, Agent Bowe presents it to the United States Attorney's Office, a written report. He will come in and personally talk with the attorney handling this case.

"Now, Agent Bowe came to our office—

"THE COURT: It's proper for you to comment on the system but don't detail facts outside the record.

"MR. ANDREWS: Yes, your Honor. "The agents in charge would then come to the United States Attorney's office. They generally will talk with an Assistant United States Attorney, such as myself. If I feel, after talking with them—

"MR. FARKAS: Your honor, I think that's improper.

"THE COURT: Confine this to the general procedure, and I'll permit you to go ahead, Mr. Andrews.

"MR. ANDREWS: If the Assistant United States Attorney—

"THE COURT: You cannot comment on what happened outside of the courtroom in this case.

"MR. ANDREWS: If the Assistant United States Attorney feels that there has been in fact a violation, he will check with the United States Attorney. If those two agree that in fact a violation has occurred, then they prepare an indictment.

"An indictment is a piece of paper. But that indictment is again presented for a check and balance because it's then presented to the Grand Jury composed of people drawn from the same list as yourself, testimony will be presented to that Grand Jury, and only then if they feel that there has in fact been a crime, will they return a true bill, an indictment.

"The procedure happens in every criminal case. There is a system of checks and balances. No attorney wants to come into court if there's not a true checks and balances system. This is the system that was followed in this case."

We find this performance astonishing. The prosecutor should have known better. The court should have stopped him the instant that he embarked on this line of argument. Its purpose could only have been to persuade the jury to convict, regardless of how weak the government's evidence might be; to persuade the jury that the defendant must be guilty, else he would never have been indicted. After such an argument, where is the presumption of innocence, where the requirement that the jury consider only the evidence in the case, where the government's burden to prove its case beyond a reasonable doubt? We have difficulty imagining an argument less proper or more surely prejudicial.

Similar, though far less blatant, arguments have been held to require reversal. *See* Hall v. United States, 5 Cir., 1969, 419 F.2d 582, 587; McMillian v. United States, 5 Cir., 1966, 363 F.2d 165, 168–169. *See also* A.B.A. Project on Standards for Criminal Justice, The Prosecution Function, Approved Draft, 1971, §§ 5.8(d), 5.9; *id.*, The Function of the Trial Judge, Tentative Draft, 1972, § 5.10. Reversal is required here.

Because there must be a new trial, we consider other assignments of error.

3. *Exhibits 5, 6, 7, and 9.*

■ Cummings contends that the court erred in admitting government's Exhibits 5, 6, 7, and 9, which were summaries of Cummings' purchases, sales, and closing inventory of tuinal, seconal, and Robitussen A.C. during the period from November, 1969, to April 22, 1971.

At trial Inspector Hodson gave the following testimony relating to Exhibits 5, 6, 7, and 9. He personally examined all the invoices, and withdrew those that showed purchases of tuinal, seconal and Robitussen A.C. After Hodson pulled out the pertinent invoices, Agent Bowe "recorded the invoice, company name, brand name, invoice number, date, and the amount of the drug." The invoices represented the total amount of each drug purchased by the B & N Pharmacy.

Inspector Hodson then determined the amount that the B & N Pharmacy had sold by totaling the prescriptions that had been filled and refilled. Hodson

looked through the prescriptions a thousand at a time, and pulled out those prescriptions dealing with tuinal, seconal, or Robitussen A.C. He laid these prescriptions aside. The amount of each of these prescriptions was then recorded on Exhibits 5, 6, or 7, depending on the drug, by Agent Bowe or Ozment. The Agents examined the back of each prescription in order to determine whether there had been a refill. If there had been, that would also be recorded.

The original invoices representing purchases were contained in the government's proposed Exhibit 4. Because these invoices also showed other drug purchases, the district court thought Cummings might be prejudiced by their admission and therefore excluded Exhibit 4. However, this proposed exhibit remained lodged with the court.

Agents Bowe and Ozment determined Cummings' closing inventory of tuinal, seconal, and Robitussen A.C. by counting every capsule and every ounce that was in stock. Agent Bowe testified:

> "To determine the closing inventory, we took the drug tuinal from the shelf and counted each pill, unless it was a bottle with an unbroken seal. After counting each of the, or after counting tuinal, we then asked the pharmacist, Mr. Cummings, if he had any other drugs in the store, of tuinal."

The same procedure was followed for seconal and Robitussen A.C. The results of this survey were recorded by the Agents on government's Exhibit 9.

The district court did not err in admitting the summaries in government's Exhibits 5, 6, 7, and 9. *See generally* Costello v. United States, 1956, 350 U.S. 359, 360, 76 S.Ct. 406, 100 L.Ed. 397; Burton v. Driggs, 1873, 87 U.S. (20 Wall.) 125, 136, 22 L.Ed. 299; Coplin v. United States, 9 Cir., 1937, 88 F.2d 652, 670–671; Wilkes v. United States, 9 Cir., 1935, 80 F.2d 285, 291; Shreve v. United States, 9 Cir., 1935, 77 F.2d 2, 6; Bruno v. United States, 9 Cir., 1933, 67 F.2d 416, 420; Rule 10–06, "Proposed Rules of Evidence for United States Courts and Magistrates," 46 F.R.D. 183,

414; 4 J. Wigmore, Evidence § 1230, at 434 (1940).

"This court and many other circuit courts of appeal have frequently approved the use of charts, calculations, tabulations and summaries in both civil and criminal cases where such documents were prepared from original records which were available for inspection and use in cross-examination."

Gross v. United States, 9 Cir., 1953, 201 F.2d 780, 787. *Accord*, Gendelman v. United States, 9 Cir., 1951, 191 F.2d 993, 996–997; Willapoint Oysters, Inc. v. Ewing, 9 Cir., 1949, 174 F.2d 676, 691; Augustine v. Bowles, 9 Cir., 1945, 149 F.2d 93, 96; United States v. Kelley, 2 Cir., 1939, 105 F.2d 912, 918.

The requirements of *Gross* appear to have been satisfied in the present case. The testimony of Inspector Hodson and Agent Bowe clearly establishes, and Cummings does not dispute, that the summaries represented by government's Exhibits 5, 6, 7, and 9 were prepared from "original records." It also appears that the original records were "available" within the meaning of *Gross*.

There is no requirement that the original records be offered or received in evidence; rather, the requirement is that the ". . . mass [of evidence] . . . summarily testified to, if the occasion seems to require it, be placed on hand in court. . . ." Augustine v. Bowles, *supra*, 149 F.2d at 96. The original invoices were on hand, included in the government's proposed Exhibit 4, but it is unclear whether all the original records were "on hand in court" when government's Exhibits 5, 6, 7, and 9 were introduced.

In the present case, however, there was no error even if the original records were not in court. This requirement is not an absolute one. Augustine v. Bowles, *supra*, 149 F.2d at 96. We doubt that the circumstances here required that the records be deposited with the court. There is nothing in the record to indicate that the government refused to permit Cummings to inspect

or use the original records. In fact, there is nothing to indicate that Cummings even attempted to inspect the records prior to or during trial. At a new trial, the records must be available to defense counsel.

4. *The jury instructions.*

Cummings contends that certain of the court's instructions to the jury departed from the law on the presumption of innocence and the government's burden of proof. None of the instructions of which Cummings complains was objected to. Thus Rule 30, F.R.Crim.P. would preclude our considering them, unless we found plain error under Rule 52(b). We find no plain error here because, when considered with other instructions, those of which Cummings complains are harmless.

Nevertheless, because there is to be a new trial, we do consider the claimed errors, in order to avoid a recurrence of them at that trial.

The instructions to which Cummings objects are these:

1. On the second page of its instructions, the court said:

"The law presumes a defendant to be innocent of crime. Thus a defendant, although accused, begins the trial with a 'clean slate'—with no evidence against him. And the law permits nothing but legal evidence presented before the jury to be considered in support of any charge against the accused. So the presumption of innocence alone is sufficient to acquit a defendant, unless the jurors are satisfied beyond a reasonable doubt of the defendant's guilt after careful and impartial consideration of all of the evidence in the case."

■ Cummings argues that this instruction suggests that as soon as the trial begins and some evidence is received the presumption of innocence vanishes. We find no merit in this argument.

2. Four pages later, the following appears:

"Presumptions, like the presumption of innocence, are also deductions and conclusions. They are deductions or conclusions which the law requires the jury to make in the absence of evidence which leads the jury to a different or contrary conclusion.

"A presumption continues to exist only so long as it is not overcome or outweighed by evidence to the contrary.

"But unless and until the presumption is outweighed, the jury should find in accordance with the presumption of innocence."

■■ This instruction is one of several dealing with evidentiary matters. Cummings argues that it suggests that any evidence contrary to the presumption of innocence will overcome that presumption. We find merit in this argument. The presumption of innocence is not an ordinary evidentiary presumption; it is the converse of the government's burden to prove and persuade beyond a reasonable doubt. Both the presumption and the burden remain throughout the trial and go with the jury when it deliberates. The presumption does not disappear when evidence to the contrary is received; it is overcome only by evidence convincing the jury beyond a reasonable doubt. The instruction would be unobjectionable, however, as one dealing with evidentiary presumptions, if all reference to the presumption of innocence were eliminated.

3. Fifteen pages later, there is the following:

"Now, although serving as a juror in criminal cases is a very serious responsibility, there is really nothing particularly different in the way a jury should consider the evidence in a criminal case, from that in which all reasonable persons treat any question depending upon proof or evidence that is presented to them.

"First of all, you're expected to use your good common sense; consider the evidence in this case for only

those purposes for which it has been admitted, and give it a reasonable and fair construction, in the light of your common knowledge of the natural tendencies and inclinations of human beings.

"Should the accused be proved guilty, say so. If not proved guilty, say so."

 Cummings argues that this instruction, and especially the first paragraph, intrudes upon the defendant's right to be proved guilty beyond a reasonable doubt. It was so held in Tarvestad v. United States, 8 Cir., 1969, 418 F.2d 1043, 1048–1049, although the error was also found harmless because of other instructions. We agree with Cummings' criticism. In considering the evidence, the jury is bound to bear in mind that the evidence must do more than convince; it must convince beyond a reasonable doubt. The language in the first paragraph is not consistent with this elementary proposition or with other portions of the charge in which the court correctly stated the rules. We think that the defect in the instruction could be cured by either omitting the first paragraph, or modifying it by inserting after the word "question" the words "arising in the most important of their affairs and." It would also be wise to rephrase the concluding paragraph to read: "If the accused be proved guilty beyond a reasonable doubt, say so; if not so proved guilty, say so." *Cf.* Devitt & Blackmar, Federal Jury Practice and Instructions, § 17.06 (1970). If the second modification that we suggest is made, we doubt that the first paragraph, as given, would be error at all, much less reversible error, but we think that it would be better to omit the paragraph or modify it as we suggest.

5. *Cross-examination of character witnesses.*

 The cross-examination of Cummings' two character witnesses about the defendant's arrest on a charge of receiving stolen property, when the prose-cutor knew that the charges had been dismissed, was not improper.

 The Supreme Court has long held that a defendant's character witnesses may be cross-examined concerning rumors about the defendant and about arrests, even though the arrest did not culminate in convictions. Michelson v. United States, 1948, 335 U.S. 469, 479, 482, 69 S.Ct. 213, 93 L.Ed. 168. *See generally* United States v. Wolfson, 2 Cir., 1968, 405 F.2d 779; Josey v. United States, 1943, 77 U.S.App.D.C. 321, 135 F.2d 809.

The only limitation on this form of cross-examination is that the questions be asked in good faith. United States v. Beno, 2 Cir., 1963, 324 F.2d 582; Malatkofski v. United States, 1 Cir., 1960, 179 F.2d 905. There is nothing in the record to indicate that the prosecutor's questions were asked in bad faith.

Other errors assigned, if error at all, are not likely to recur at a new trial, and need not be considered.

Reversed and remanded for a new trial.