**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Terrence P.(aul) URBANIS,
Defendant-Appellant.**

**No. 73-2238.**

United States Court of Appeals,
Ninth Circuit.

Jan. 2, 1974.

Certiorari Denied April 15, 1974.
See 94 S.Ct. 1952.

Charles M. Sevilla, Federal Defenders of San Diego, John J. Cleary, San Diego, Cal. (argued), for defendant-appellant.

Harry D. Steward, U. S. Atty., David Curnow, Asst. U. S. Atty. (argued), San Diego, Cal., for plaintiff-appellee.

Before BARNES, HUFSTEDLER, and CHOY, Circuit Judges.

## OPINION

BARNES, Circuit Judge:

On February 14, 1973, appellant carrying a .38 calibre Smith and Wesson revolver (stated by appellant to have been unloaded), entered the Wells-Fargo Bank, 500 Broadway Street, San Diego, and presented a withdrawal slip to a teller, on the back of which was written: "Be cool and calm. No alarms, Bills only. Let's not get anyone hurt." First thinking the proceedings were a joke, the teller quickly decided it was not, when appellant put his hand inside his coat to simulate a gun. Appellant produced a bag for the paper money, and the teller placed small bills in and on the bag. The appellant requested "Your twenties and hundreds, too." Appellant left the bank with about $800, of which $28 was "bait money" in marked bills. Pictures were taken of appellant during the robbery, and later shown to bank employees and his apartment manager, all of whom identified him as the robber.

Appellant told the F.B.I. he had chosen the Wells-Fargo Bank after a careful two weeks search. He first considered robbing a Bank of America branch, a Security Pacific Bank branch and a United California Bank branch—all in San Diego—but for one reason or another thought the Wells-Fargo branch more vulnerable.

Appellant walked out of the bank, through Woolworth's Store from 5th Street (one block), where his automobile was parked. He immediately drove to an ocean beach, and disposed of the bag used in the robbery. He went to his apartment, paid the rent, bought some groceries, put some money in his wallet, and hid the rest in a lamp in his apartment. That same day appellant gave the apartment manager five one dollar bills for a five dollar bill. Later one of the dollar bills was found to have been part of the marked bait money.

At no time did appellant deny the robbing of the bank, or the use of the gun. His sole defense was insanity.

Counsel for defendant urges five alleged errors—the government compresses them to four.

I. On *voir dire* examination of the jury, the trial judge refused to ask prospective jurors whether or not any of them or their families had undergone psychiatric treatment or counseling. We perceive no error in the refusal of the district court to ask the prospective jurors this question. We are aware, as was the district court, of the sensitive nature of enquiries into the jurors' experiences with psychiatric treatment. The district court's probing by other questions adequately explored the area.

After the court was ready to have the jury sworn, the matter was again raised by counsel for defendant, the court additionally asked if any jurors, "by reason of their past experiences, would tend to be other than completely impartial with respect to this particular case—to this particular charge—or to this particular asserted defense (of insanity) in this case." (R.T. at 202).

II. The judge had previously asked all jurors whether any had "expressed an adverse opinion about the defendant or any defendant who asserted the defense of insanity." He then asked the jurors if there way any juror who does not feel that psychiatry is a valid branch of the field of medical science. At this point prospective Juror Stone did or said something which does not appear in the record of the trial. Counsel for defendant stated that Stone "laughed, or gave a gesture and laughed." Juror Stone immediately stated, "My sincere apologies, your Honor." The court stated, "All right." (R. T. at 175). As it developed, Juror Stone never sat on the jury. (R.T. at 201–204; C.T. at 78). The record discloses

that Stone's name was not drawn under the Arizona system in which jurors are picked by lot from the group of prospective jurors who have undergone *voir dire.*

■ Both sides concede the trial court "has a broad discretion as to the questions to be asked prospective jurors." Appellant relies heavily on Silverthorne v. United States, 400 F.2d 627, 638–639 (9th Cir. 1968). The trial court's questioning of the jury in this case does not in the slightest resemble the questioning (or lack of it), in the *Silverthorne* case. A "snicker" here (as counsel for appellant described it on appeal, but not on the record), does not necessarily or with certainty show bias. It may show nervousness or amusement. A psychiatrist himself might have "snickered" at the form of the question asked. We certainly cannot find there was plain error in this minor incident.

■ III. The sufficiency of the evidence to establish defendant's sanity depends entirely on whom the trier of fact decides should be believed. This rule is particularly apt when expert witnesses differ in their opinions. Appellant insists that he thinks he had the better expert (a Dr. Feighner), than had the government (a Dr. Robuck). There is in this argument no basis for an appellate court to disturb a jury verdict. The dispute is a matter for the trier of facts to determine. United States v. Handy, 454 F.2d 885 (9th Cir. 1971); Holm v. United States, 325 F.2d 44 (9th Cir. 1963).

"The psychiatric testimony, presented by both sides, was in conflict. The jury could properly weigh the opinions of both psychiatrists and resolve that conflict. In reviewing their determination, we must view the evidence and all reasonable inferences in the light most favorable to the government. Glasser v. United States, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942). This standard of review extends to the issue of sanity and the credibility of the experts. United States v.

Handy, 454 F.2d 885, 888 (9th Cir.), cert. denied, 409 U.S. 846, 93 S.Ct. 49, 34 L.Ed.2d 86 (1972)."
United States v. Chavez-Ortiz, 488 F.2d 175 (9th Cir. 1973).

United States v. Cooper, 465 F.2d 451 (9th Cir. 1972) is relied on by appellant. But there the government offered no expert evidence on the issue of sanity (R. T. at 452), despite the evidence defendant had been under the influence of a heavy intake of Valium.

IV. Error in one instruction mentioning "reasonable doubt" is urged. This is a problem discussed in United States v. Cummings, 468 F.2d 274 (9th Cir. 1972) where Judge Duniway criticized and condemned the instruction given in that case (and here), but found it was not plain error, and would not reverse Cummings' conviction.

The criticized instruction is: "If the accused be proved guilty, say so. If not proved guilty, say so." The principal objection is that, just as haste sometimes makes waste, so does a shortened sentence sometimes leave out something it should contain. The proper statement would be: "If the accused be proved guilty *beyond a reasonable doubt,* say so. If not *so* proved guilty, say so." *Cf.* United States v. Cummings, *supra,* at 281.

Likewise, this court has suggested both in *Cummings, supra,* and elsewhere, that after the word "question" in the first paragraph (of the three paragraphs that are usually given together) there should be inserted the words: "arising in the most important of their affairs and  . . . "

This court has seriously thought that restraint on our part, and perhaps some delay, in holding the effect of the erroneous instruction to be plain error requiring reversal, would warn and enlighten the district courts, and eliminate the use of such criticized instruction from the district courts in this circuit. We have not met with much success.

■ The case now before us, urges counsel for appellant, is such "a close"

case that we should now reverse the defendant's conviction. We do not consider this a close case; the only issue in dispute was the defendant's sanity. We consider it a fact case based on conflicting expert testimony. We believe it was correctly decided. We do not propose to use it in an effort to convert judges to a more careful consideration of the *Cummings'* holding. Guilty felons may sometimes be freed because of the necessity to educate police officers. Thus far, the same rule does not apply to the education of district court judges, and we hope it never need be.

V. Finally, appellant asserts the testimony of Dr. Robuck should have been stricken because of alleged improprieties of government counsel. The trial court did not so view the matter, or find such improprieties existed, nor do we.

Finding no error, we affirm.