UNITED STATES of America,
Plaintiff-Appellee,

v.

**Carl S. PETERSEN, Defendant-Appellant.**

UNITED STATES of America,
Plaintiff-Appellee,

v.

**Joseph Arthur ZAPPIA, Jr.,
Defendant-Appellant.**

Nos. 74–2492, 74–2451.

United States Court of Appeals,
Ninth Circuit.

March 24, 1975.
Rehearing Denied May 12, 1975.

---

Charles M. Giles (argued in 74–2451), Tucson, Ariz., Anthony D. Terry, (argued in 74–2492), Tucson, Ariz., for defendants-appellants.

Daniel G. Knauss, Asst. U. S. Atty., (argued), for plaintiff-appellee.

## OPINION

Before MERRILL and TRASK, Circuit Judges, and JAMESON,* District Judge.

TRASK, Circuit Judge:

These consolidated appeals are from conviction at a jury trial of conspiracy to dispose of property of the United States without authority in violation of 18 U.S.C. § 371 (conspiracy to defraud) and 18 U.S.C. § 641 (embezzlement or theft of property of the United States).

The case arose out of transactions instituted by the manager of the Smithsonian Astrophysical Observatory facility at Mt. Hopkins near Amado, Arizona. The manager, Charles Tougas, was a co-defendant below but is not joined in this appeal. Tougas was assigned in 1966 to develop the site of the Mt. Hopkins facility. To this end he had authority to obtain excess property from government installations. Petersen was an operator of a Tucson salvage yard, and Zappia was a truck driver.

Tougas arranged for the acquisition of excess government property. Some of it was not taken to the Amado facility for Mt. Hopkins but was brought to Petersen's yard where it was exchanged or sold. Zappia drove to government installations in the Western states with a truck he leased in the name of the Smithsonian Institute and, using government forms provided by Tougas, picked up the excess property. On one occasion there was evidence that he sold goods off the truck.

The theory of the defense at trial was that Petersen and Zappia acted on the apparent authority of Tougas and lacked the specific intent required for a conviction under 18 U.S.C. sections 371 and 641.

* Honorable William J. Jameson, Senior United States District Judge from the District of Montana, sitting by designation.

The jury found the appellants not guilty of the two substantive counts under section 641 but found them guilty of conspiracy under section 371. Petersen was sentenced to 2 years imprisonment and Zappia to 1 year and 1 day.

After the jury was out for the first day, it announced that it was hopelessly deadlocked. The court discharged the jury for the night and urged them to try again the next day. After the second day the jury again announced that they were hopelessly deadlocked. The judge again discharged them for the night and urged them to try again the next day. On the third day the jury reached its verdict.

During deliberations the jury several times requested clarification of the instructions. On the afternoon of the first day the jury was called back in and instructed again on the meaning of the terms "intent, motive and unknowingly." On the morning of the second day the jury again requested clarification of the meaning of motive and intent and then asked for a reading of the entire charge. The judge read the entire charge and then gave cursory answers to the specific questions the jurors had posed.

On the third day of deliberations the incident occurred which gave rise to the claim of error by appellants. At 1:40 p.m. the judge sent a note into the jury which read: "Madame Foreman, Ladies and Gentlemen, has the jury been able to arrive at a verdict on any count in the indictment with respect to any defendant? Please answer only yes or no. Can I be of any assistance in your further deliberations?"

The jury sent back a note which stated that they had not reached any verdicts but went on: "we feel that we can soon arrive at a verdict upon verification of this question . . . is ignorance of the law any excuse?" The judge wrote the word "no" after the question and over the objection of defense counsel sent it in to the jury. The judge noted that the "no" was written in a "heavy hand." This was sent to the jurors at 2:05 p.m. At 2:30 p.m. the judge received another communication from the jury. This one read: "Is this your answer to the above question: Is ignorance of the law any excuse? . . . or if not, please explain the above 'No.'" The judge wrote across the note, in what he termed "a bold hand," "ignorance of the law is not an excuse." Eighteen minutes after receiving this communication, the jury reached a verdict.

Appellants claim that the note the judge wrote to the jury saying that "ignorance of the law is no excuse" was erroneous, misleading and contradictory. They are correct. As the trial judge accurately noted in earlier instructing the jury, ignorance of the law is to be considered in determining whether there existed the specific intent necessary for a violation of the law charged.[1] While the principle has often been stated by the courts that ignorance of the law is no excuse, its use in the circumstances of this case was at least misleading to the jury. The jury had previously indicated that it was having difficulty with the terms intent and motive, and the judge's summary treatment of the meaning of ignorance of the law may have caused the jury to eliminate it as a factor affecting specific intent.

Bollenbach v. United States, 326 U.S. 607, 66 S.Ct. 402, 90 L.Ed. 350 (1945), is closely on point with the facts of this appeal. There the jury had also twice announced that they were deadlocked. They then asked for a supplemental instruction on a vital point of law, and the judge incorrectly answered their question. The Court stressed the importance of clarity in last minute instructions to the jury, particularly where the jury had evidenced confusion.

■ The last minute instruction here is not as clearly incorrect as that in *Bollenbach*. It was, however, at least misleading on a vital issue in the case. Its

---

1. See United States v. Jonas Bros. of Seattle, Inc., 368 F.Supp. 783 (D.Alaska 1974); United States v. Gunn, 97 F.Supp. 476 (W.D.Ark. 1950).

prejudicial effect may be measured by the short time it took to reach a verdict after the receipt of the instruction—18 minutes. This conclusion is strengthened by the fact that the jury had been deliberating for almost 3 days and had twice announced itself deadlocked. Further, the jury, by its requests for additional instructions had shown itself to be confused by the intent issue. As noted by the Court in *Bollenbach,* "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy. In any event, therefore, the trial judge had no business to be 'quite cursory' in the circumstances in which the jury here asked for supplemental instruction." 326 U.S. at 612–13, 66 S.Ct at 405. *See also* Powell v. United States, 347 F.2d 156 (9th Cir. 1965).

■ The test in the Ninth Circuit has been stated to be: "The ultimate question is 'whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors." *Powell, supra,* 347 F.2d at 158. The *Powell* court also noted that: "It is no answer to say that the supplemental instruction was correct, so far as it went; or that it was to be read in the light of the original instructions and that these fairly presented the issues." *Id.*

■ The supplemental instruction by the court that "ignorance of the law is no excuse" constitutes reversible error. It was clearly prejudicial and was not harmless.

Error is also assigned to an unrequested charge to the jury given by the court at the close of the entire instructions. The court told the jury that:

"If you find that the law has not been violated as charged, you should not hesitate for any reason to return a verdict of not guilty. On the other hand, if you find that the law has been violated as charged, you should not hesitate because of any emotion like sympathy to return a verdict of guilty."

He then invited counsel to state any other objections, and the government attorney outside the presence of the jury informed the court of the problem of United States v. Urbanis, 490 F.2d 384 (9th Cir.), cert. denied, 416 U.S. 944, 94 S.Ct. 1952, 40 L.Ed.2d 296 (1974), and of United States v. Cummings, 468 F.2d 274 (9th Cir. 1972). Although both counsel objected to the instruction, the court declined to withdraw or modify it.

In each of the cases cited an instruction had been given in the following language: "Should the accused be proved guilty, say so. If not proved guilty, say so." *Cummings, supra,* 468 F.2d at 281. Judge Duniway wrote for the panel in *Cummings* that the instruction was error because it did not properly say, "If the accused be proved guilty beyond a reasonable doubt, say so . . . ." Id. Since no objection had been made to the instruction the court declined to find it plain error, but criticized it because it was not consistent with other instructions or with the elementary quantum of proof. *Cummings* was approved in United States v. Urbanis, 490 F.2d 384 (9th Cir. 1974). Again, the criticized instruction was couched in terms of "If the accused be proved guilty, say so. If not proved guilty, say so." *Urbanis,* 490 F.2d at 386. Although again critical of the instruction the court declined to reverse because the case was not a close one and was correctly decided.

■ We are of the opinion that the instruction was improper under *Cummings* and *Urbanis* and constitutes reversible error. The phrase "violated as charged" without qualification may be susceptible to misinterpretation. The accused is entitled to have the jury told directly and unequivocally that "unless you find beyond a reasonable doubt that the law has been violated as charged, you should not hesitate for any reason to return a verdict of not guilty."

Other errors were charged and have been considered. We do not find them to be meritorious or to require comment.

The judgment is reversed.