**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Buck Duane WALKER, Defendant-Appellant.**

No. 76–1193.

United States Court of Appeals, Ninth Circuit.

Jan. 13, 1978.

Rehearing and Rehearing En Banc Denied May 11, 1978.

David Bettencourt (argued), Honolulu, Hawaii, for defendant-appellant.

William J. Eggers, III, Asst. U.S. Atty. (argued), Honolulu, Hawaii, for plaintiff-appellee.

Before CHOY and KENNEDY, Circuit Judges, and FERGUSON,* District Judge.

* Honorable Warren J. Ferguson, United States District Judge for the Central District of California, sitting by designation.

KENNEDY, Circuit Judge:

Buck Duane Walker was tried by jury on a three-count indictment. Count I charged Walker with theft within the special maritime and territorial jurisdiction of the United States, a violation of 18 U.S.C. § 661; count II charged him with transporting stolen property in interstate commerce, a violation of 18 U.S.C. § 2314; and count III charged him with making a false statement in an application for a passport, a violation of 18 U.S.C. § 1542. Walker was convicted on all three counts. He appeals his conviction on the first two counts, contending that photographic evidence used against him was discovered by an illegal search, and further that the trial court erred in some of its jury instructions and in denying a defense motion to consolidate the two counts.

I

Walker contends that the court erred in denying his motion to suppress certain photographs introduced at trial by the Government. To evaluate this claim, we briefly examine the events preceding discovery of the photographs. Walker took some of the pictures and claimed that he owned the film. The film was delivered for processing to a drug store in Honolulu by a Stephanie Stearns, under the name of S. Allen.[1] Stearns later wrote a note to a Mrs. Wollen asking her to pick up the prints at the drug store. Stearns enclosed five dollars to pay for the prints. The note asked Wollen either to deliver the photographs to Stearns personally or to mail them to Stearns in care of a Larry Seibert.

Mrs. Wollen picked up a folder containing the developed prints at the drug store as Stearns had instructed. After learning that Stearns had been arrested, Wollen took the photographs to the police headquarters and showed them to an officer. The officer told Wollen that the pictures were of no

1. Stearns was a co-principal of Walker. She was convicted in a separate trial. We affirmed her conviction in *United States v. Stearns,* 550 F.2d 1167 (9th Cir. 1977).

particular significance, and Wollen then mailed the folder of photographs to S. Allen, c/o Larry Seibert in an 8 × 10 brown manila envelope.

On receiving the photographs, Seibert took the brown envelope containing the photographs to Halawa Jail, where Stearns was being detained pending trial. A large sign at the entrance warned that all items introduced into the facility were subject to search. The jail officer told Seibert that if the envelope were left for Stearns, it would be searched. Nevertheless, Seibert delivered the envelope to the officer.

As part of a routine security check, the prison authorities opened the envelope and examined its contents. Upon inquiry at the jail by agent Hamilton of the FBI about the contents of the package, a prison matron informed Hamilton that the envelope contained photographs. Hamilton asked to see the pictures, and they were shown to him at the jail. After viewing them, Hamilton signed an affidavit for a warrant to seize the pictures. The warrant was issued, and Hamilton seized the envelope and the photographs. Walker contends that his fourth amendment right to be secure from unreasonable searches was violated by the inspection of the envelope and display of its contents to agent Hamilton, and by the subsequent seizure.

The trial court assumed that Walker had standing to challenge the search and the seizure. This point is not free from doubt. Since Stearns paid for the prints and assumed full control over them, any claims by Walker to a proprietary interest in the prints or to a legitimate expectation of privacy in the contents of the envelope are attenuated. Nevertheless, since an appropriate ground for resolving the search and seizure issue on the merits is readily apparent to us without resolving the standing issue, we will assume, without deciding, that Walker has standing to challenge this search.

█ We conclude that because there was a voluntary consent to the search the district court properly refused to suppress the photographs. Stearns as co-owner and possessor of the negatives and as owner (or co-owner) of the prints could consent to a search and thereby bind Walker. *See, e. g., United States v. Matlock,* 415 U.S. 164, 171 n. 7, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974); *Frazier v. Cupp,* 394 U.S. 731, 740, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969). Stearns in turn entrusted care of the prints to Seibert. There was apparently no limitation on his control over the envelope and photographs. Stearns directed Wollen to leave the prints with Seibert, permitting Seibert to determine the manner of their disposition and delivery. We therefore find that Stearns assumed the risk that the messenger might consent to let anyone inspect or examine them. Where one with authority to do so consents to a search, the fact of consent validates the intrusion, and, by definition, there is no improper invasion of any expectation of privacy that is recognized by the law. The fact of Seibert's consent is beyond dispute. He was told that the items were subject to search and was further told that he could avoid the search altogether by taking the parcel with him rather than leaving it for Stearns, or that he could mail the material. Aware of these alternatives, Seibert handed over the prints voluntarily. His consent makes the search permissible.[2]

█ The warrant specifically authorized seizure of the photographs. Walker challenges the warrant by attacking the accuracy of certain statements in the affidavit filed in support of its issuance. But the incorrect statements in the affidavit were made neither deliberately nor negligently. Further, even if the matters in question were stricken from the affidavit, the remaining allegations adequately support a finding of probable cause for issuance of

2. In view of our holding that there was a voluntary consent to the search, we need not examine the extent to which proper authorities may inspect envelopes delivered to a jail for transmittal to an inmate.

the warrant and seizure of the property.[3] The inaccuracy that appellant raises was not material and did not vitiate the affidavit. *See United States v. Calhoun,* 542 F.2d 1094, 1099 (9th Cir. 1976); *United States v. Prewitt,* 534 F.2d 200, 202 (9th Cir. 1976). Both the search and the resulting seizure were lawful, and suppression of the evidence was not required by the fourth amendment.

## II

Walker next challenges the district court's instructions to the jury pertaining to count I of the indictment. The indictment charged that the theft of the *Sea Wind* had taken place "at Palmyra Island, within the special maritime and territorial jurisdiction of the United States." One of the principal issues at the trial was whether Walker had intended to steal the *Sea Wind* at the time he sailed it from Palmyra, or whether an intent to steal was formed at some later point in the voyage.

After the jury had begun its deliberations, it sent two questions to the court. The first inquiry was as follows:

> Our interpretation of Count I is that the defendant had to have the intent to steal and purloin the Sea Wind before leaving the *Palmyra area.* If we were to determine that the intent occurred at a later time on the trip to Hawaii, would that necessitate a not guilty verdict on Count I?

The court responded:

> The offense defined in count I must be committed "within the special maritime and territorial jurisdiction of the United States." This term is defined in 18 U.S.C. 7 which reads in part, insofar as it is pertinent here: "The term special maritime and territorial jurisdiction of the United States includes the high seas, any other waters within the admiralty and maritime jurisdiction of the United States and out of the jurisdiction of any particular State."

The Court has taken judicial notice that the island of Palmyra is within the special maritime and territorial jurisdiction of the United States. And, for the purpose of this definition, with respect to the jurisdiction of the State of Hawaii, the boundaries of Hawaii extend three miles seaward from the land.

Defense counsel objected at trial to the court's response. This objection is renewed on appeal.

Walker contends that the trial court's answer was confusing and might have caused the jury to convict him for an act not charged in the indictment and that the defense did not have the opportunity to rebut at trial, *viz.,* stealing the boat some time after he left the Palmyra area. Walker thus asserts that the court's response constituted an impermissible amendment to the indictment. We agree.

On appeal, we may infer from questions asked by the jury that it was confused about a controlling legal principle. If that is the case, we inquire into whether the trial court, by its responses or supplemental instructions, eliminated that confusion. *United States v. Petersen,* 513 F.2d 1133 (9th Cir. 1975); *Powell v. United States,* 347 F.2d 156 (9th Cir. 1965). "The ultimate question is 'whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors.'" *Powell v. United States,* 347 F.2d at 158. We have also noted that "[i]t is no answer to say that the supplemental instruction was correct, so far as it went; or that it was to be read in the light of the original instructions and that these fairly presented the issues." *Id.*

In this case the jury's questions demonstrate that it was uncertain whether a conviction would be proper if the defendant formed the criminal intent to steal the craft some time during the 1,000-mile voyage to Hawaii after leaving the Palmyra area. In response to the jury's concern, the trial

---

3. The misstatements were that the photographs were stolen property. Actually, some of them had been taken by Walker and had been paid for by Stearns. The affidavit also stated, however, that the photographs showed scenes of Stearns' and Walker's voyage on the stolen vessel and were needed in the investigation of the offenses for which Stearns and Walker were charged.

court merely defined special maritime and territorial jurisdiction of the United States and advised the jury that such jurisdiction commenced three miles seaward from the State of Hawaii. To the extent that this answer was responsive, the most reasonable interpretation of the court's answer is that so long as Walker was in the special maritime or territorial jurisdiction of the United States, the jury could find him guilty if the intent to steal had been formed either in the Palmyra area or at any other place and time.

The grand jury might have indicted Walker for stealing the boat at some place other than Palmyra, but it did not do so. Neither the indictment nor the evidence introduced during the prosecution's case put the defense on notice that Walker could be convicted of stealing the *Sea Wind* at some time or place on the long voyage after leaving Palmyra. The trial court's supplemental instruction to the jury, by implication, constituted an amendment to the indictment that substantially enlarged its scope, to the prejudice of the defendant. It was therefore error to give that response. *Howard v. Daggett*, 526 F.2d 1388, 1390 (9th Cir. 1975); *see United States v. Dawson*, 516 F.2d 796, 804 (9th Cir. 1975).

■ We are aware that the trial court faces a difficult task in attempting to respond to a jury's communication. A trial judge is often reluctant to respond to questions in language similar to that used by the jury, particularly where inquiries are phrased as hypothetical cases or as questions requiring a categorical yes or no answer. Questions or illustrations from the jury may be phrased so that a simple affirmative or negative response might favor one party's position, place undue weight on certain evidence, or indicate that the trial judge believes certain facts to be true when such matters should properly be determined by the jury. Because the jury may not enlist the court as its partner in the fact-finding process, the trial judge must proceed circumspectly in responding to inquiries from the jury. The court may properly attempt to avoid intrusion on the jury's deliberations by framing responses in terms of supplemental instructions rather than following precisely the form of question asked by the jury.

■ The trial court in this case apparently recognized these considerations, and carefully avoided answering the jury either with a simple yes or no, or in the precise form of the jury's communication. Further, the supplemental instructions, when considered in isolation from the jury's inquiry, correctly stated the law. The problem is simply that the first supplemental instruction, when viewed in light of the jury's first question, is confusing and is subject to an interpretation that is prejudicial to the accused. We therefore reverse the appellant's conviction on count I.

■ Walker also contends that the trial court responded improperly to the jury's questions pertaining to count II. Count II charged that the transportation of stolen property had taken place between "Palmyra Island, a possession in the United States, within the special maritime and territorial jurisdiction in the United States, to the Island of Oahu in the district of Hawaii."

As to count II, the jury inquired:

If property is considered stolen only from point in time at Kauai on return to Oahu, is it considered transported stolen property from *Palmyra Island to Oahu*?

The court responded:

The offense defined in count II requires a transportation in interstate or foreign commerce. Interstate and foreign commerce is defined in 18 U.S.C. 10, which reads, the term interstate commerce includes commerce between one state, territory, possession or the District of Columbia. The term foreign commerce includes commerce with a foreign country. That's the end of that section.

Transportation solely within the State of Hawaii is not in interstate or foreign commerce under this definition.

No objection to the instruction was made at trial. Fed.R.Crim.P. 30. Moreover, we find that the court's response was entirely appropriate. There is no error, therefore,

with respect to the supplemental instruction given as to count II.

### III

Appellant argues that the court erred in refusing to give two of the defense's proposed instructions bearing on intent. The court's instructions to the jury on the question of intent were proper and thorough. "Once the judge has made an accurate and correct charge, the extent of its amplification must rest largely in his discretion." *Southern Pacific Co. v. Souza*, 179 F.2d 691, 695 (9th Cir. 1950), *quoting United States v. Bayer*, 331 U.S. 532, 536, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947). *See also Mann v. Anderson*, 447 F.2d 533, 537–38 (7th Cir. 1971); *Fleming v. Michigan Mutual Liability Co.*, 363 F.2d 186, 189 (5th Cir. 1966).

Appellant also assigns as error the court's denial of Walker's motion to consolidate counts I and II of the indictment, charging violations respectively of 18 U.S.C. § 661 and 18 U.S.C. § 2314. These statutory provisions, however, serve separate and distinct purposes and require different elements of proof. *United States v. Stearns*, 550 F.2d 1167, 1172 (9th Cir. 1977). The district court therefore did not err in refusing to consolidate counts I and II of the indictment, and appellant could properly be tried on both charges.

We have considered appellant's other contentions and find them without merit.

The judgment of conviction on count I is REVERSED. The judgment of conviction on count II is AFFIRMED.