UNITED STATES of America, Plaintiff—Appellee,

v.

**Denys Ray HUGHES, Defendant—Appellant.**

No. 06–10615.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 19, 2007.

Filed Dec. 26, 2007.

---

Michael T. Morrissey, Esq., Office of the U.S. Attorney, Phoenix, AZ, for Plaintiff–Appellee.

Gregory A. Bartolomei, Esq., Federal Public Defender's Office, Phoenix, AZ, for Defendant–Appellant.

Before: HUG, W. FLETCHER, and CLIFTON, Circuit Judges.

MEMORANDUM *

Denys Ray Hughes appeals his conviction for possession of an unregistered si-

* This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36–3.

lencer, possession of an unregistered destructive device, and attempted production of a biological toxin. We affirm the judgment of the district court.

First, Hughes argues that the district court erred in denying his motion to suppress evidence obtained pursuant to a warrant that was issued based on observations during a search of his car on July 7, 2005. Hughes contends that he did not freely and voluntarily give consent for the search, relying on *United States v. Chan–Jimenez*, 125 F.3d 1324, 1326–28 (9th Cir.1997). In considering the five voluntariness factors set forth in *Chan–Jimenez*, 125 F.3d at 1327, we conclude that the district court did not clearly err when it found that, at the time Hughes gave consent, the encounter was consensual and Hughes was not in custody. *See United States v. Washington*, 490 F.3d 765, 771–72 (9th Cir.2007); *United States v. Mendez*, 476 F.3d 1077, 1080 (9th Cir.2007); *United States v. Cormier*, 220 F.3d 1103, 1110–11 (9th Cir. 2000); *United States v. Del Vizo*, 918 F.2d 821, 824–25 (9th Cir.1990). We further conclude that the district court did not clearly err when it determined that, viewing the voluntariness factors under the totality of the circumstances, Hughes's consent was free and voluntary. *See Washington*, 490 F.3d at 775–76; *United States v. Rodriquez*, 464 F.3d 1072, 1077–78 (9th Cir.2006).

Second, Hughes contends that the district court erred in denying his motion to suppress the evidence from the initial entry into his Phoenix apartment on July 13, 2005. He argues that he withdrew his consent prior to the initial search. We conclude that the district court did not clearly err when it found that his intent to withdraw consent to search the apartment was not objectively clear and unequivocal when it was communicated to officers who had no reason to know that he had granted such consent. *See Florida v. Jimeno*, 500 U.S. 248, 250–51, 111 S.Ct. 1801, 114 L.Ed.2d 297 (1991); *United States v. Gutierrez–Mederos*, 965 F.2d 800, 803–04 (9th Cir.1992); *United States v. Brown*, 884 F.2d 1309, 1311–12 (9th Cir.1989); *see also United States v. Sanders*, 424 F.3d 768, 774–75 (8th Cir.2005).

■ Third, Hughes challenges the sufficiency of the evidence to support his convictions. Viewing the evidence in the light most favorable to the prosecution, we conclude that the trial record contains sufficient evidence to permit a rational trier of fact to find the essential elements of each crime beyond a reasonable doubt. *See United States v. Naghani*, 361 F.3d 1255, 1261 (9th Cir.2004); *United States v. Johnson*, 229 F.3d 891, 894–95 (9th Cir.2000). The prosecution presented evidence that Hughes brought the silencer devices into his home, and that Hughes was familiar with silencers and their components. This evidence would allow a rational juror to conclude beyond a reasonable doubt that Hughes knowingly possessed unregistered silencers. The prosecution presented evidence that all of the components necessary to assemble a pipe bomb were in Hughes's apartment, with the exception of a fuse. The prosecution also presented evidence that Hughes knew how to use paper as a substitute for a traditional fuse. Therefore, a rational juror could conclude beyond a reasonable doubt that Hughes knowingly possessed an unregistered destructive device in the form of components that could readily be assembled into a pipe bomb.

■ With respect to the third count, attempted production of a biological toxin for use as a weapon, the prosecution presented evidence that Hughes possessed instructions for the manufacture of ricin and all of the necessary equipment and materials to follow those instructions. The pros-

ecution presented further evidence that Hughes's mortar and pestle and food dehydrator tested positive for castor bean DNA. Based on this evidence, a rational juror could find beyond a reasonable doubt that Hughes had taken a substantial step toward the production of ricin. The prosecution also presented evidence of books in Hughes's possession as well as internet searches on Hughes's computer which, combined with Hughes's own statements and other physical evidence, would permit a rational juror to find beyond a reasonable doubt that Hughes intended to use the ricin as a weapon. *Naghani,* 361 F.3d at 1261; *cf. United States v. Baker,* 98 F.3d 330, 337–38 (8th Cir.1996).

Fourth, Hughes claims that the district court erred in denying his request for a special verdict on the count of attempted production of a biological toxin. Considering the instructions as a whole, we note that the court mitigated any risk of juror confusion by providing an explicit unanimity instruction for the substantial step element of the third count. We conclude that the court did not abuse its discretion in denying the request for a special verdict on that count. *See United States v. Reed,* 147 F.3d 1178, 1180–81 (9th Cir.1998); *United States v. Jessee,* 605 F.2d 430, 431 (9th Cir.1979) (per curiam) (as amended).

■ Fifth, Hughes argues that the district court erred in its response to a jury inquiry. "The necessity, extent and character of additional [jury] instructions are matters within the sound discretion of the trial court." *United States v. Southwell,* 432 F.3d 1050, 1052 (9th Cir.2005) (internal quotation marks omitted; alteration in *Southwell)* (quoting *Wilson v. United States,* 422 F.2d 1303, 1304 (9th Cir.1970) (per curiam)).

The question posed by the jury was expressly answered in the jury instructions. The jury asked: "What is the definition of a weapon under law?" The district court responded to the jury inquiry: "This definition is not an issue in the case. Please refer to the Court's instructions." The jury instructions spoke directly to the issue that the jury had to decide:

> To attempt to produce a toxin with the intent to "use as a weapon" means to attempt to produce a toxin with the intent to use it to injure or harm another person or persons. The government does not have to prove an intent to kill another person or persons. Furthermore, intent to use as a weapon does not require the government to prove actual or attempted use of ricin.

> The term "use as a weapon" does not include the attempted production of toxin for a peaceful purpose.

Hughes does not contend that this instruction was an improper statement of the law. At trial, defense counsel agreed that the inquiry should be answered by referring the jury back to the instruction already given. The disagreement as to the response was limited to the court's additional statement that "[t]his definition is not an issue in the case." It appears that the district court may have understood the jury's question to concern the phrase "weapon under law," rather than the single word "weapon." The district court may have been mistaken in that understanding, but even if so, the court's response was not misleading. The charge against Hughes was attempted production of a toxin "for use as a weapon" under 18 U.S.C. § 175(a). The jury did not have to find that the ricin was a weapon, but rather whether the intent was to use it as a weapon. It was the phrase "for use as a weapon" that was at issue, and the jury instruction provided all the information necessary to fully understand that phrase, so the court's response, which explicitly referred the jury back to the instructions,

was not erroneous. The charge, taken as a whole, was not "such as to confuse or leave an erroneous impression in the minds of the jurors." *United States v. Petersen,* 513 F.2d 1133, 1136 (9th Cir. 1975) (internal quotation marks omitted) (quoting *Powell v. United States,* 347 F.2d 156, 158 (9th Cir.1965)); *cf. Southwell,* 432 F.3d at 1053. The district court did not abuse its discretion in responding to the jury inquiry.

Sixth, Hughes contends that his sentence was excessive. We conclude that the sentence was reasonable and that the sentencing judge sufficiently considered the factors listed in 18 U.S.C. § 3553(a) in applying the Sentencing Guidelines to Hughes's case. *See Rita v. United States,* — U.S. ——, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007); *United States v. Mix,* 457 F.3d 906, 912–13 (9th Cir.2006); *United States v. Cantrell,* 433 F.3d 1269, 1280 (9th Cir.2006).

**AFFIRMED.**

WILLIAM A. FLETCHER, Circuit Judge, dissenting in part:

I dissent from the panel's memorandum disposition solely on the issue of the district court's response to the jury inquiry. I would reverse Hughes's conviction on Count Three.

The verdict form for Count Three asked the jury to determine whether Hughes was guilty of "attempted production of a biological toxin (ricin) for use as a weapon." *See* 18 U.S.C. § 175(a). Jury Instruction 16 listed the elements for Count Three. The instruction stated, in relevant part: "To attempt to produce a toxin with the intent to 'use as a weapon' means to attempt to produce a toxin with the intent to use it to injure or harm another person or persons.... The term 'use as a weapon' does not include the attempted production of toxin for a peaceful purpose." The par-

ties do not dispute the correctness of this instruction.

Less than two hours after the jury began its deliberations, the jury submitted a note to the court asking, "What is the DEFINITION OF A WEAPON UNDER LAW?" Meeting outside of the presence of the jury to discuss the note, counsel for both sides suggested that the court refer the jury back to the instructions. Then, the court on its own initiative suggested providing a more detailed response: "I would suggest that, the definition requested is not a consideration in this case. Please refer to the instructions for—instructions regarding this case."

The prosecution voiced no objection, but Hughes's attorney responded, "Well, actually the definition requested is an issue in this case." The court disagreed: "It is not one of the issues in any of those instructions, what a weapon is under law. That's not a definition that they have to consider. They've got what they have to consider." Hughes's attorney repeated her concern: "Judge, I agree they have it in their instructions. However, it is an issue, specifically in Count 3." The court responded that "a weapon under law is not a definition which is at issue." Hughes's attorney renewed her request that the court limit its response to "please refer to your instructions." The court responded by saying, "I'm going to give what I give. Again, you know, jurors that want to become lawyers are not—and it's not relevant. The instructions tell them what the law is.... As a matter of fact, I went back and cautiously looked at the instructions, and I didn't see any reference to, quote, weapons under law, unquote." The court then wrote its response on the jury note as follows: "This definition is not an issue in this case. Please refer to the Court's instructions."

"We generally review for abuse of discretion a district court's response to a juror inquiry. However, we review de novo whether a jury instruction correctly states the law, and whether an instruction violates due process." *United States v. Verduzco,* 373 F.3d 1022, 1030 n. 3 (9th Cir.2004) (citations omitted).

In reviewing a court's response to a jury inquiry, "we may infer from questions asked by the jury that it was confused about a controlling legal principle. If that is the case, we inquire into whether the trial court, by its responses or supplemental instructions, eliminated that confusion." *United States v. Walker,* 575 F.2d 209, 213 (9th Cir.1978). "[T]he district court has the responsibility to eliminate confusion when a jury asks for clarification of a particular issue." *United States v. Hayes,* 794 F.2d 1348, 1352 (9th Cir.1986). "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 90 L.Ed. 350 (1946); *see also United States v. Martin,* 274 F.3d 1208, 1210 (8th Cir.2001) ("When a jury explicitly requests supplemental instruction, a trial court must take great care to insure that any supplemental instructions are accurate, clear, neutral, and non-prejudicial." (internal quotation marks omitted) (quoting *United States v. Beckman,* 222 F.3d 512, 521 (8th Cir.2000))). In fulfilling this obligation, trial courts must use "particular care and acumen." *Verduzco,* 373 F.3d at 1031. Courts have recognized the propriety of providing supplemental instructions "in response to the jury's specific inquiry and for the purpose of clarifying legalistic terms to a lay jury." *Burrup v. United States,* 371 F.2d 556, 559 (10th Cir.1967). A court may abuse its discretion where it "may have misunderstood the jury's question and therefore responded too narrowly," rather than "simply direct[ing] the

jury's attention to the totality of the instructions." *Arizona v. Johnson,* 351 F.3d 988, 996 (9th Cir.2003) (discussing *Powell v. United States,* 347 F.2d 156 (9th Cir. 1965)). "The ultimate question is whether the charge taken as a whole was such as to confuse or leave an erroneous impression in the minds of the jurors." *Walker,* 575 F.2d at 213 (internal quotation marks omitted) (quoting *Powell,* 347 F.2d at 158).

I would hold that the court's statement that "[t]his definition is not an issue in this case" was sufficiently misleading as to require reversal of the jury's guilty verdict on Count Three. The jury's question strongly suggests that the jury was confused by a controlling legal principle—namely, whether and how a biological toxin might be created "for use as a weapon." *See Walker,* 575 F.2d at 213; *cf. United States v. Riggins,* 40 F.3d 1055, 1057 (9th Cir.1994) (noting that an object may be a dangerous weapon per se, based solely on the object's latent capabilities, or it may be a dangerous weapon based on the manner of its use). Count Three of the Verdict Form required the jury to determine whether the prosecution had proven beyond a reasonable doubt that Hughes had attempted to produce "a biological toxin (ricin) for use as a weapon." Jury Instruction 16, which does not define "weapon," but does define "use as a weapon," should have resolved that confusion.

The jurors undoubtedly were familiar with the ordinary definition of weapon. *See, e.g.,* Webster's Third New International Dictionary 2589 (1993) (defining weapon as "an instrument of offensive or defensive combat"). The verdict form, however, used the word in an unfamiliar context. The jurors' question indicated that they understood that ricin could not be used as a weapon in the ordinary sense of a knife, gun or club, and that they wanted to know the legal definition of the

term applicable in the case against Hughes. That is, their inquiry about the "definition of a weapon under law" was a request to the court to provide the legal definition relevant to this case. *Cf. United States v. Rios–Calderon,* 80 F.3d 194, 196 (7th Cir.1996) (discussing a jury note requesting "a definition of the words 'entrapment' and 'ensnarement' as it pertains to the law").

If a jury indicates that it is confused by an instruction, we must determine "whether the trial court, by its responses or supplemental instructions, eliminated that confusion." *Walker,* 575 F.2d at 213. A trial judge responding to a jury inquiry must take into account the context from which the inquiry has arisen. *See, e.g., Bollenbach,* 326 U.S. at 612, 66 S.Ct. 402; *Powell,* 347 F.2d at 157–58; *see also Glaros v. H.H. Robertson Co.,* 797 F.2d 1564, 1571 (Fed.Cir.1986) (noting that the trial court must consider a jury's query "in context," recognizing that the question may be "a reasonable shorthand or lay manner of asking" a relevant question). The district court disregarded the context in which the question was posed and failed to recognize the likelihood that the jurors were asking for a legal definition of the term "weapon" applicable to Count Three. Rather than eliminating the jury's confusion about the proper definition of "weapon," the district court's response, at the very least, failed to clear up the confusion. In fact, it did something worse: it improperly directed the jury to ignore a critical and disputed element of Count Three. The jury instructions, as supplemented by the court's response to the jury's question, were "such as to confuse or leave an erroneous impression in the minds of the jurors." *United States v. Petersen,* 513 F.2d 1133, 1136 (9th Cir.1975) (internal quotation marks omitted) (quoting *Powell,* 347 F.2d at 158).

The district court's error was not harmless. The court's answer—that the requested definition of "weapon under law" "is not an issue in this case"—in effect directed the jury to strike the last five words from Count Three and to relieve the prosecution of the burden of proving that Hughes had intended to produce the ricin for the purpose of harming others. This element of Count Three was the weakest aspect of the government's case. The government had presented no evidence that Hughes had ever harmed anyone in the past or that he had ever even expressed any motive or desire to harm anyone. Indeed, the government's expert testified that ricin has legitimate, non-criminal uses. The jury, lacking the requisite legal training to parse its own question and the court's response, most likely interpreted the court's statement to mean that there was no issue in the case regarding whether Hughes, if he did in fact attempt to produce ricin, actually intended to use it as a weapon. *See Bollenbach,* 326 U.S. at 612, 66 S.Ct. 402 ("The influence of the trial judge on the jury is necessarily and properly of great weight, and jurors are ever watchful of the words that fall from him. Particularly in a criminal trial, the judge's last word is apt to be the decisive word." (internal quotation marks and citation omitted) (quoting *Starr v. United States,* 153 U.S. 614, 626, 14 S.Ct. 919, 38 L.Ed. 841 (1894))). The answer therefore prejudiced Hughes. *See id.* ("If it is a specific ruling on a vital issue and misleading, the error is not cured by a prior unexceptional and unilluminating abstract charge."); *United States v. Southwell,* 432 F.3d 1050, 1053 (9th Cir.2005); *cf. Walker,* 575 F.2d at 214.

The conclusion that the trial court abused its discretion follows from our decision in *United States v. Petersen,* 513 F.2d 1133. There, the defendant was charged with embezzlement of property of the

United States and conspiracy to defraud. *Id.* at 1134. The judge had instructed the jury at least twice regarding the meaning of the word intent, and in response to a note from the jury asking whether "ignorance of the law [is] any excuse," the judge responded in writing that "ignorance of the law is not an excuse." *Id.* at 1135. We held that the response to the jury inquiry was "erroneous, misleading and contradictory," because ignorance of the law was relevant "in determining whether there existed the specific intent necessary for a violation of the law charged." *Id.* The court found that "[w]hile the principle has often been stated by the courts that ignorance of the law is no excuse, its use in the circumstances of this case was at least misleading to the jury" and "may have caused the jury to eliminate it as a factor affecting specific intent." *Id.* The court found that even if the instruction was not "clearly incorrect," it was "at least misleading on a vital issue in the case." *Id.*

We have previously recognized that "[f]ailure to provide the jury with a clarifying instruction when it has identified a legitimate ambiguity in the original instructions is an abuse of discretion." *See Southwell,* 432 F.3d at 1053. Our conclusion should be no different when the jury instructions are clear, but a jury's inquiry demonstrates juror confusion and the court's response creates a palpable risk that the jury will disregard those instructions and mis-apply the law.

I would therefore reverse Hughes's conviction on Count Three.