**Charles E. McDOWELL, Petitioner–Appellant,**

v.

**Arthur CALDERON, Warden of the California State Prison at San Quentin, Respondent–Appellee.**

**No. 96–99000.**

United States Court of Appeals, Ninth Circuit.

Argued En Banc and Submitted Aug. 28, 1997.

Decided Nov. 24, 1997.

---

834

Andrea G. Asaro, Rosen, Bien & Asaro, San Francisco, California, for petitioner-appellant.

Robert F. Katz, Deputy Attorney General, Los Angeles, California, for respondent-appellee.

Before: HUG, Chief Judge, BROWNING, FLETCHER, PREGERSON, REINHARDT, BRUNETTI, KOZINSKI, THOMPSON, TROTT, KLEINFELD and THOMAS, Circuit Judges.

TROTT, Circuit Judge:

On May 20, 1982, Charles E. McDowell, Jr., killed Paula Rodriguez. Following this grisly homicide, a jury convicted him of various crimes, including murder committed with the special circumstances of burglary and rape, and sentenced him to death. After exhausting his claims for relief in state court, he filed a petition for a writ of habeas corpus in federal district court, which was denied. He appealed, and a divided three-judge panel of this court affirmed the district court. The panel's opinions, which fully recite the facts and the procedural background of this case, are reported at 107 F.3d 1351 (9th Cir.1997), *amended and superseded in part by* 116 F.3d 364 (9th Cir.1997).

By a vote of our active judges, the matter has been reheard en banc. We now vacate that part of the panel's opinion designated as "C. Supplemental Introduction," *id.* at 1358, leaving intact those parts affirming McDowell's convictions and deciding other issues. We have decided as to the remaining issues that the alleged misunderstanding of the jury regarding whether it could consider certain mitigating penalty phase evidence amounted to fatal constitutional error. We believe (1) the jury misunderstood a critical aspect of its task, and (2) that misunderstanding had a substantial and injurious effect and influence on its verdict of death, an effect which in all reasonable likelihood survived the trial court's ineffective attempt to cure it. Thus, we vacate McDowell's sentence of death and remand to the district court with instructions to grant the writ and to order a new trial in state court on the penalty phase of this case.

## I

The alleged error we examine occurred during the third day of jury deliberations in the penalty phase.[1] Although both parties agree that the jury members had been adequately instructed on the relevant law and they had the written instructions with them, the jurors sent a note to the trial judge which stated:

> We, the jury in the above entitled action, request the following:
>
> Direction. We have an 11 to 1 vote for death. The one juror empathically [sic] feels her mitigating circumstances are equal to the aggravating circumstances. The other 11 jurors do not all agree with the one juror[']s mitigating circumstances as all being either testimony or evidence *that should be considered.* Please advise which following circumstances can be considered mitigating circumstances.
>
> 1. Inadequate or insufficient psychiatric help.
> 2. Love/hate relationship with father/mother.
> 3. Daily extreme mental and physical abuse by father, also witness to daily abuse to mother and siblings.
> 4. Religious extremes confused defendant.
> 5. Confusing sexual mores at home (incest), with mother condoning or aware of incest/abuse.
> 6. Accused of death of favorite sister.
> 7. Stress of divorce from family.
> 8. Rejection of mother's love during teen years.
>
> Thank you.

(Emphasis added).

In a hearing outside the presence of the jury, the state trial court said:

> I feel I cannot say anything in light of the sentence which indicates which way they are voting, and anything I say at this particular time will be coercive.
>
> · · ·
>
> They are asking me to interpret the evidence; something I cannot do.

---

1. With thanks to Judge Thompson, we borrow heavily from his excellent presentation of this issue in his majority opinion for the panel.

Counsel for McDowell took the position that "the question could be answered; that the mitigating—or the circumstances, the circumstances named, are proper circumstances."

The state trial court responded to the jury's question:

You're asking me, in essence, to decide the case for you. You have been instructed as to the law and *I hate to throw you out like this.*

But if you go back and read the instructions, in particular you have one instruction in which the mitigating and aggravating factors are listed.

Then you have another instruction, the concluding instruction which reads as follows:

"One mitigating circumstance may outweigh several aggravating circumstances or one aggravating circumstance may outweigh several mitigating circumstances. You shall give each the weight to which you find it to be entitled."

Those are the two instructions that I think really apply. I would ask you to go back, reread those instructions . . . .

(Emphasis added).

After a brief conference at the bench between court and counsel, the court asked the foreman, "Does that answer your question for now?" The foreman answered, "Yes, sir."

The jury resumed deliberations on Friday afternoon and, after a weekend break, returned a verdict of death.

## II

■ A jury cannot fulfill its central role in our criminal justice system if it does not follow the law. It is not an unguided missile free according to its own muse to do as it pleases. To accomplish its constitutionally-mandated purpose, a jury must be properly instructed as to the relevant law and as to its function in the fact-finding process, and it must assiduously follow these instructions.

The Supreme Court has made it abundantly clear, in a series of cases going back to 1976, that for a jury determination of death to stand against Eighth Amendment scrutiny, the jury's discretion must be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action." *Godfrey v. Georgia,* 446 U.S. 420, 427, 100 S.Ct. 1759, 1764, 64 L.Ed.2d 398 (1980) (quoting *Gregg v. Georgia,* 428 U.S. 153, 189, 96 S.Ct. 2909, 2932–33, 49 L.Ed.2d 859 (1976)) (opinion of Stewart, Powell and Stevens, JJ.).

This means that if a State wishes to authorize capital punishment it has a constitutional responsibility to tailor and apply its law in a manner that avoids the arbitrary and capricious infliction of the death penalty. Part of a State's responsibility in this regard is to define the crimes for which death may be the sentence in a way that obviates "standardless [sentencing] discretion." *It must channel the sentencer's discretion by "clear and objective standards" that provide "specific and detailed guidance"* and that "make rationally reviewable the process for imposing a sentence of death." As was made clear in *Gregg,* a death penalty "system could have standards so vague that they would fail adequately to channel the sentencing decision patterns of juries with the result that a pattern of arbitrary and capricious sentencing like that found unconstitutional in *Furman* [v. *Georgia,* 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) ] could occur." *Godfrey,* 446 U.S. at 428, 100 S.Ct. at 1764–65 (citations and footnotes omitted) (emphasis added). The Court reiterated this message in *Walton v. Arizona,* 497 U.S. 639, 653, 110 S.Ct. 3047, 3057, 111 L.Ed.2d 511 (1990), saying, "When a jury is the final sentencer, it is essential that the jurors be properly instructed regarding all facets of the sentencing process."

■ *Gregg's* requirement that a jury be "suitably directed and limited so as to minimize the risk of wholly arbitrary and capricious action" surely does not end the moment the judge instructs the jury, but continues until a verdict is reached and returned. As they work towards a verdict, the jurors must stay in the channel charted for them by state law. To this end, they may need ongoing guidance.

## III

■ In the matter before us, we confront a case of serious jury mistake and confusion. The plain language of the jury's request for guidance demonstrates that eleven jurors were confused about the law and erroneously believed they could not consider eight aspects of McDowell's background as mitigating evidence.

■ Given the Eighth Amendment rules mandated by the Supreme Court in *Furman, Gregg,* and their offspring, the jury's legal disorientation is of constitutional concern. According to these rules, a jury *must* consider the evidence put forward by a defendant in mitigation of his culpable behavior. Such consideration is a constitutional imperative. As a plurality of the Court said in *Lockett v. Ohio,* 438 U.S. 586, 605, 98 S.Ct. 2954, 2965, 57 L.Ed.2d 973 (1978), five years before McDowell's trial:

There is no perfect procedure for deciding in which cases governmental authority should be used to impose death. But a statute that prevents the sentencer in all capital cases from giving independent mitigating weight to aspects of the defendant's character and record and to circumstances of the offense proffered in mitigation creates the risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty. When the choice is between life and death, that risk is unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments.

■ A majority of the Court repeated this message in *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), five months before the murder for which McDowell stands convicted. The issue in *Eddings* was not the constitutionality of a limiting statute as in *Lockett,* but of a sentencing trial judge's conclusion that he could not "in following the law ... consider the fact of this man's violent background." *Id.* at 112–13, 102 S.Ct. at 876 (internal quotations omitted). The Court interpreted this statement to mean that "the trial judge did not evaluate the evidence in mitigation and find it wanting as a matter of fact; rather he found that *as a matter of law* he was unable even to consider the evidence." *Id.* at 113, 102 S.Ct. at 876 (emphasis in original). In reversing the judgment of death, the Court offered this reasoning:

Just as the State may not by statute preclude the sentencer from considering any mitigating factor, neither may the sentencer refuse to consider *as a matter of law,* any relevant mitigating evidence. In this instance, *it was as if the trial judge had instructed a jury to disregard the mitigating evidence Eddings proffered on his behalf.*

*Id.* at 113–14, 102 S.Ct. at 876–77 (second emphasis added). It follows as night the day that although the jury determines the appropriate weight to be given to the mitigating evidence, the jury "may not give it no weight by excluding such evidence from their considerations." *Id.* at 115, 102 S.Ct. at 877.

The jury's mistake and confusion in the instant case communicated to the judge in its note squarely fit within the teaching of *Lockett* and *Eddings.* Although the jurors had been properly instructed, the *understanding* of eleven of them–shades of *Eddings*–was "as if the trial judge had instructed [them] to disregard the mitigating evidence [McDowell] proffered on his behalf." *Id.* We repeat the jury's note in relevant part:

We have an 11 to 1 vote for death. The one juror empathically [sic] feels her mitigating circumstances are equal to the aggravating circumstances. The other 11 jurors do not all agree with the one juror[']s mitigating circumstances *as being either testimony or evidence that should be considered.* Please advise *which following circumstances can be considered mitigating circumstances.*

(Emphasis added). The factors then listed in the note undeniably qualify under *Lockett* and *Eddings* as mitigating evidence. *See Skipper v. South Carolina,* 476 U.S. 1, 4–5, 106 S.Ct. 1669, 1670–71, 90 L.Ed.2d 1 (1986) (evidence is mitigating if it "might serve 'as a basis for a sentence less than death' ") (quoting *Lockett,* 438 U.S. at 601, 98 S.Ct. at 2963). The State so concedes on appeal. Both McDowell's counsel and the prosecutor so advised the trial judge. The prosecutor

forthrightly said, "Well, I don't know if it is taking sides but those [factors listed by the jurors] are proper factors to consider." McDowell's counsel requested that the jurors be told that the matters to which the note referred could be considered as mitigating factors. Thus, everyone in the courtroom understood that the defendant's mitigating evidence must be considered by the jury; everyone, that is, *except eleven of the jurors*-the most important participants at that stage of the proceedings.

The question, then, is whether this fundamental error had any "substantial and injurious effect or influence" on the jury's sentence of death, *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 1721–22, 123 L.Ed.2d 353 (1993) (quoting *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)). To answer this question, we look for specific guidance to *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990). In *Boyde*, the Supreme Court confronted a claim that an arguably ambiguous jury instruction "restrict[ed] impermissibly a jury's consideration of relevant [penalty phase] evidence. ..."[2] To evaluate such a claim, the Court fashioned a reviewing yardstick which we find appropriate here: "The proper inquiry in such a case is whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevents consideration of constitutionally relevant evidence." *Id.* at 380, 110 S.Ct. at 1198. If the answer is "yes," the error necessarily satisfies the *Brecht* test for substantial and injurious error. Accordingly, the ultimate result here depends on whether the trial judge's response to the jury's note adequately corrected the eleven jurors' misunderstanding and dispelled their confusion. We conclude on these facts, in these circumstances, and in the light of controlling authority that the error did substantially injure and influence the jury's verdict. We so conclude for three main reasons.

First, as of the moment of the delivery of the note, eleven jurors were outside of the channel established by state law as required by the Eighth and Fourteenth Amendments. The risk created by this legal derailment was that they would impose the death penalty "in spite of factors which ... [might] call for a less severe penalty." *Lockett*, 438 U.S. at 605, 98 S.Ct. at 2965. The Supreme Court has identified this risk as one "unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Id.* It follows that the jury's deliberations up to the point they asked the judge for help were constitutionally flawed.

Second, the trial judge did not identify the exact problem confounding the eleven jurors. He simply referred the jurors to the original instructions defining mitigating circumstances. The jurors had these instructions with them all along. Both sides agree the instructions were technically flawless. They were, however, the same instructions that for some unknown reason eleven of the jurors did not correctly understand in the first place. Under these circumstances, we agree with Justice Broussard of the California Supreme Court: "There is no point in reiterating language which has failed to enlighten the jury." *People v. McDowell*, 46 Cal.3d 551, 581, 250 Cal.Rptr. 530, 763 P.2d 1269 (1988) (Broussard, J., dissenting in part.)

Third, even presuming that the jurors read the instructions after returning from their attempt to obtain guidance from the court, the record gives us no assurance whatsoever that they then understood the law. All we know for sure is that the eleven jurors who initially did *not* understand that the law required them to consider McDowell's mitigating evidence eventually voted as they had while under the influence of their initial error.

Judge Thompson's dissent argues that "there is nothing complicated about the instruction to which they were referred." Even if this characterization is correct, it is irrelevant. The fact is that *this* jury did not

---

2. The challenged instruction was an earlier version of the "factor (k)" instruction used in McDowell's trial. That earlier version was found lacking in sufficient guidance by the Supreme Court of California in *People v. Easley*, 34 Cal.3d 858, 878 n. 10, 196 Cal.Rptr. 309, 671 P.2d 813 (1983). *See* California Jury Instructions, Criminal 8.85(k) (5th ed.1988) for a later refinement of the instruction; *Boyde*, 494 U.S. at 374 n. 2, 110 S.Ct. at 1194–95 n. 2.

comprehend it. Under these circumstances, it would be folly to presume-as we usually do-that in the end they got it right and followed the law. The foreman's affirmative response to the judge's parting inquiry about whether he had answered their question proves little. The response was perfunctory. It came without conversation with the rest of the jurors and before the jurors had any opportunity further to study the instruction to which the court had referred.

▪ Jurors' uncorrected confusion regarding the law may lead to verdicts reached outside of the channel required by *Godfrey* and the Eighth Amendment. This risk was identified in *Lockett.* The unremarkable prescription for such confusion is that "[w]hen a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach v. United States,* 326 U.S. 607, 612–13, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946). As the Seventh Circuit has said, *Bollenbach* places on the trial judge "a duty to respond to the jury's request with sufficient specificity to clarify the jury's problem." *Davis v. Greer,* 675 F.2d 141, 145 (7th Cir.1982). This duty exists, among other reasons, because " '[i]n a trial by jury . . ., the judge is not a mere moderator, but is the governor of the trial for the purpose of assuring its proper conduct and of determining questions of law.' " *Bollenbach,* 326 U.S. at 612, 66 S.Ct. at 405 (quoting *Quercia v. United States,* 289 U.S. 466, 469, 53 S.Ct. 698, 698–99, 77 L.Ed. 1321 (1933)). Moreover, when constitutional requirements are involved, the proper execution of this duty is a matter of insuring due process of law as guaranteed by the Fourteenth Amendment. *Cf. Estelle v. McGuire,* 502 U.S. 62, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) (jury instruction violates Due Process Clause if it affects an identifiable constitutional right).

We fully understand the trial judge's worry about saying anything that might coerce the jurors towards a verdict. The jury's unexpected revelation that they stood 11–1 for death created a need for caution. Nevertheless, the response given to their question did not adequately clear away the jurors' difficulty and place them on the right track. We realize that the manner in which this clarifying task must be done is within the sound discretion of the trial court, and that the federal Courts of Appeal have approved in some federal cases (which the State brings to our attention), the practice of simply rereading or referring the jurors to the instructions already read. However, *none* of those cases in their facts and circumstances are on a par with the instant case. In *United States v. Collom,* 614 F.2d 624, 631 (9th Cir.1979), for example, the jury's question did not relate to a matter of constitutional concern and the meaning of the note was merely "unclear." Consequently, we found no abuse of discretion in the trial judge's response, which was to reread the relevant instructions and to invite further questions "should the confusion persist." *Id.* at 631. Therefore, *Collom,* which was not a death penalty case, is easily distinguishable from our case.

McDowell's case is akin to *United States v. Warren,* 984 F.2d 325, 330 (9th Cir.1993) wherein we held that

> [i]n responding to the jury's inquiry in [the circumstances of that case] "it [was] not sufficient for the court to rely on more general statements in its prior charge." *United States v. Nunez,* 889 F.2d 1564, 1568 (6th Cir.1989). Referring the jury back to the original instruction would not correct the apparent impression of at least some jurors that intent "to hurt" rather than "to kill" might be sufficient to convict Warren of first degree murder. The Court should have provided a supplemental instruction sufficient to clear up the uncertainty that the jury had brought to the Court's attention.[3]

---

3. *See also United States v. Gordon,* 844 F.2d 1397, 1401–02 (9th Cir.1988) (error to rely on original instruction where jury expressed confusion regarding conspiracy counts); *United States v. Walker,* 575 F.2d 209, 213 (9th Cir.1978) (trial court's response to jury confusion about a controlling legal principle was insufficient because it failed to eliminate that confusion); *United States v. Bolden,* 514 F.2d 1301, 1308–09 (D.C.Cir. 1975); (trial court rereading statute and standard instruction was insufficient where jury showed confusion); *United States v. Petersen,* 513 F.2d 1133, 1136 (9th Cir.1975) (giving cursory supplemental instruction in face of jury confusion was insufficient); *Powell v. United States,* 347 F.2d 156, 157–58 (9th Cir.1965) (responding

There is no one-size-fits-all response to jury disorientation, and the sizes that may fit other facts and circumstances do not fit this case. As the Supreme Court has said many times, "the penalty of death is qualitatively different from any other sentence. We are satisfied that this qualitative difference between death and other penalties calls for a greater degree of reliability when the death sentence is imposed." *Lockett*, 438 U.S. at 604, 98 S.Ct. at 2964 (internal quotations and citations omitted). To echo here what the Supreme Court said in *Mills v. Maryland*, 486 U.S. 367, 383–84, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988), "[n]o one on this court was a member of the jury that sentenced [Charles McDowell]. We cannot say with any degree of confidence which interpretation [of the instructions McDowell's] jury adopted [after meeting with the trial judge].... The possibility that petitioner's jury conducted its task improperly certainly is great enough to require resentencing." Moreover, *Mills* observed that "[i]n reviewing death sentences, the Court has demanded even greater certainty that the jury's conclusions rested on proper grounds." *Id.* at 376, 108 S.Ct. at 1866 (citing *Lockett*, 438 U.S. at 605, 98 S.Ct. at 2965). The *Mills* Court also quoted from *Andres v. United States*, 333 U.S. 740, 752, 68 S.Ct. 880, 885–86, 92 L.Ed. 1055 (1948):

> That reasonable men might derive a meaning from the instructions given other than the proper meaning of [the statute] is probable. In death cases doubts such as those presented here should be resolved in favor of the accused.

*Id.* at 377, 108 S.Ct. at 1866. As Justice O'Connor said in her concurring opinion in *Eddings*, "*Woodson* [*v. North Carolina*], 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) and *Lockett* require us to remove any legitimate basis for finding ambiguity concerning the factor actually considered by [the sentencing body in imposing a judgment of death]." *Eddings*, 455 U.S. at 119, 102 S.Ct. at 879.

We respectfully reject our dissenting colleagues' suggestion that we regard the jury as "too ignorant" to understand the law. We do nothing of the sort. While Judge Thompson's dissent is comfortable speculating that the jurors sorted out their confusion, we are not-especially when a life is at stake.

We also respectfully reject Judge Thompson's notion that our holding "forces state trial courts to deviate from accepted, correct instructions." We find two problems with this assertion. First, it entirely misses the defining aspect of this case: it was the *jurors* who had deviated from the instructions. Expecting judges to set jurors straight with respect to a constitutional imperative can hardly be regarded-as our dissenting colleagues do-as immersing them in a "sea fraught with peril." Second, Judge Thompson's dramatic metaphor overlooks and misapprehends the very nature of jury instructions. Jury instructions are only judge-made attempts to recast the words of statutes and the elements of crimes into words and terms comprehensible to the layperson. The texts of "standard" jury instructions are not debated and hammered out by legislators, but by ad hoc committees of lawyers and judges. Jury instructions do not come down from any mountain or rise up from any sea. Their precise wording, although extremely useful, is not blessed with any special precedential or binding authority. This description does not denigrate their value, it simply places them in the niche where they belong.

By way of illustration, the jury instructions used in this case came from "California Jury Instructions Criminal," a highly regarded work known as CALJIC. CALJIC is the product of the long-standing Committee on Standard Jury Instructions, Criminal, of the Superior Court of Los Angeles, California. As excellent and as useful as they are, CALJIC's instructions are only recommendations and do not carry the force of law. *See* CALJIC, Introduction (West 6th ed.1996) (quoting Section 5 of the California Judicial Council's Standard of Judicial Administration). In fact, CALJIC emphasizes that "[a] trial judge in considering instructions to the jury shall give no less consideration to those submitted by the attorneys for the respective parties than to those contained in the latest edition of ... [CALJIC]." *Id.* All trial

---

to a jury's inquiry by merely rereading a facially

correct instruction may be inadequate).

judges, prosecutors, and defense attorneys in California understand both value of CALJIC recommendations, and their limitations.

Our own Ninth Circuit Manual of Model Jury Instructions stands on a similar footing. It begins with this caveat:

"It should be emphasized that the instructions in this Manual are *models* and are not intended to be pattern instructions. They must be reviewed carefully before use in a particular case. They are not a substitute for the individual research and drafting that may be required in a particular case, nor are they intended to discourage judges from using their own forms and techniques for instructing juries."

9th Cir. Man. of Model Jury Instr., Introduction (West 1996) (emphasis added).

If the routine task of instructing a jury with attention to the views of the parties involves navigating a "sea fraught with peril," it is navigation recommended and encouraged by us and mandated in California. It is navigation that trial judges in this circuit, both state and federal, successfully complete every day of the week. To trial judges, settling jury instructions and answering jurors' questions about them is a common task-not easy, but not treacherous either. Indeed, the California Supreme Court itself observed in affirming McDowell's sentence that the trial court "properly could have explained to the jury that it was free to consider *any* aspect of a defendant's background or character which defendant offered as a mitigating circumstance, and that some, if not all, of the listed factors, reasonably could fall within the category." *People v. McDowell,* 46 Cal.3d at 578, 250 Cal.Rptr. 530, 763 P.2d 1269. In our view, the trial judge not only "could" have done this, but after *Eddings* he was required to take appropriate steps to preserve McDowell's right to a proper decision by the jury grounded in the Constitution. Lacking such concrete instruction to the jury, and using the *Boyde* test as a guide, we conclude "there is a reasonable likelihood that the jury has applied the challenged instruction in a way that prevent[ed] the consideration of constitutionally relevant evidence." 494 U.S. at 380, 110 S.Ct. at 1198. At the least, the record bespeaks "grave

doubt" on this critical issue, which means that the "petitioner must win." *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 994–95, 130 L.Ed.2d 947 (1995).

We are mindful of the "strong policy against retrials years after the first trial where the claimed error amounts to no more than speculation." *Boyde,* 494 U.S. at 380, 110 S.Ct. at 1198. We conclude, without speculating, that it is reasonably likely that the jurors erred in their application of this critical instruction. Therefore, we adhere to the equally "strong policy in favor of accurate determinations of the appropriate sentence in a capital case...." *Id.* Parenthetically, the Supreme Court in *Boyde* had to presume possible confusion from an ambiguous instruction. *Id.* Here, we *know* that eleven of the jurors were proceeding on an erroneous premise. Accordingly, we reverse the district court on this discrete issue. We conclude that the demonstrable injurious effect and influence of the jury's mistake tainted its verdict.

IV

■ This conclusion requires us to address the State's argument that McDowell improperly asks us for the retroactive benefit of a new rule of constitutional law, in contravention of *Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989). We reject this argument. *Furman, Gregg,* and *Godfrey* all predate Ms. Rodriguez's death. *Eddings* preceded McDowell's crime by five months, and preceded his trial by over two years. The State's argument that we have never before elevated *Bollenbach* to a constitutional level is off target. *Bollenbach* is not driving this case; *Eddings* is. The core constitutional issue here arises not from the response of the judge, but from the material misunderstanding of the jurors. The judge's well-intentioned but inadequate response is germane, but only insofar as it did not ameliorate the injurious condition threatening to deprive the defendant of his constitutional right to have the jury consider his mitigating evidence.

This holding neither "breaks new ground," nor departs from precedent. *Graham v. Col-*

*lins,* 506 U.S. 461, 467, 113 S.Ct. 892, 897–98, 122 L.Ed.2d 260 (1993) (quoting *Teague,* 489 U.S. at 301, 109 S.Ct. at 1070). It represents a routine application of well settled law to the facts of this case. *Bollenbach* itself did not establish a new rule, it merely reasserted the long-standing axiom that the American judge is the neutral law-giver in criminal cases. *See Todd v. United States,* 158 U.S. 278, 15 S.Ct. 889, 39 L.Ed. 982 (1895); *Quercia v. United States,* 289 U.S. at 469, 53 S.Ct. at 698–99. As Justice Frankfurter said in *Bollenbach,* "Discharge of the jury's responsibility for drawing appropriate conclusions from the testimony depend[s] on discharge of the judge's responsibility to give the jury the required guidance by a lucid statement of the relevant legal criteria." 326 U.S. at 612, 66 S.Ct. at 405.

Thus, as to the judgment of death, we reverse the district court and remand the matter to the district court with instructions to grant the writ as to McDowell's sentence of death.

REVERSED and REMANDED.

THOMPSON, Circuit Judge, dissenting, with whom Judges BRUNETTI, KOZINSKI, and KLEINFELD join.

The question before us is: can we assume the jurors remained confused after the state trial court directed them to an instruction which, in no uncertain terms, stated they could consider the factors listed in their question as mitigating evidence.[1] I remain convinced that we cannot make this assumption.

In response to the jury's question, the state trial court referred the jury to an instruction which listed the factors the jury "shall" consider. One of these factors required the jury to consider:

Any other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime, and any other aspect of the defendant's character or personal history that the defendant of-

fers as a basis for a sentence less than death.

There is no question that this instruction accurately set forth the law. *See Boyde v. California,* 494 U.S. 370, 381–82, 110 S.Ct. 1190, 1198–99, 108 L.Ed.2d 316 (1990). The instruction also is directly responsive to the jury's question because the instruction clearly tells the jurors they can consider anything in McDowell's background as mitigating evidence.

The majority assumes the jury remained confused after being directed to. this instruction. Such an assumption requires us, as a federal court, to speculate that the state court jurors either did not read the instruction to which they were referred, or if they read it they were too ignorant to understand it. This not only usurps the function of the jury, it denigrates the state trial process, and it is plainly wrong.

Jurors are presumed to follow the instructions. *See United States v. Span,* 75 F.3d 1383, 1390 (9th Cir.1996). There is nothing complicated about the instruction to which they were referred. It tells the jurors quite simply that they can consider not only the matters specifically listed in the instruction, but "any other aspect of the defendant's character or personal history that the defendant offers as a basis for a sentence less than death." What could be clearer than that? The majority either concludes "any" doesn't mean "any," or the majority simply erases this part of the instruction from the record.

It is no answer to speculate that the admittedly correct instruction confused the jury. How often in human experience have we proved true the admonition: "When all else fails, read the instructions!" Who hasn't, when stymied by some task, finally read or reread the instructions and then understood what to do? This bit of common sense applies here. We know the state trial judge read the instructions to the jury before they retired to deliberate. We know the jury had the instructions in the jury room. We don't

---

1. It is questionable whether the jurors were confused at all. Their question can easily be read as one indicating *disagreement* about whether the matters they listed, such as "rejection of mother's love during teenage years," were of sufficient mitigating force to extenuate the defendant's grisly crimes of sexually assaulting and stabbing to death Ms. Rodriguez. In response, the trial court correctly told the jurors he could not decide this for them.

know, however, whether, at the time the jurors returned to court with their question, they had focused on the instruction to which the court referred them. We do know that after the court referred them to this instruction and told them to go back and read it, they returned to court thereafter, not with a further question, but with a unanimous verdict calling for the death penalty. In the face of all of these facts, the majority engages in a series of speculations in order to set aside the defendant's sentence of death.

The majority's conclusion is wrong. Moreover, it forces state trial courts to deviate from accepted, correct instructions. This forced deviation compels state courts to embark upon unfamiliar seas fraught with peril. The majority opinion illustrates this.

The majority states that in responding to the jury's question, the trial judge should have instructed "the jury that it was free to consider any aspect of a defendant's background or character which defendant offered as a mitigating circumstance, and that *some, if not all,* of the listed factors [in the jury's question], reasonably could fall within the category." (Emphasis added). This won't do.

The first part of the majority's suggested instruction, of course, is precisely the instruction to which the state trial court referred the jury when it told them they could consider "any other aspect of the defendant's character or personal history that the defendant offers as a basis for a sentence less than death." The rest of the majority's suggested instruction, however, illustrates the problem of deviating from jury instructions which correctly instruct the jury on the applicable law. The majority's suggested instruction would have caused the jury to wonder which "some" of the factors on their list they could consider and whether they could or could not consider all of the factors. The trial judge wisely did not give such an instruction. Instead, he referred the jurors to the correct instruction that told them they could consider *any* factor offered by the defendant.

For sound reasons, we have approved a practice of referring the jury to an original instruction when that instruction is responsive to the jury's question and correctly instructs the jury on the applicable law. *See United States v. Collom,* 614 F.2d 624, 631 (9th Cir.1979). This is what the state trial court did in this case and it did not err when it did so.

I respectfully dissent.

KOZINSKI, Circuit Judge, dissenting.

This is, so far as I know, the first case in Anglo–American jurisprudence to hold that a judge erred because he gave a jury instruction that is 100 percent correct. Whatever the merits of this rule—and I agree with Judge Thompson that there is not much— such an extraordinary departure from established law may not be applied on collateral review. *See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989).

Our rule has always been that a trial court may "respond to an inquiry from the jury by rereading relevant instructions that properly state the law applicable to the case." *United States v. Papia,* 560 F.2d 827, 843 (9th Cir. 1977). The majority somehow concludes— based on "shades of *Eddings*"—that principles of reliability in capital sentencing required a new, more detailed supplemental instruction in this case. *See maj. op.* at 837. But *Teague* directs us to "survey the legal landscape ... and determine whether a state court considering the defendant's claim at the time his conviction became final would have felt compelled by existing precedent to conclude that the rule he seeks was required by the Constitution." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 953, 127 L.Ed.2d 236 (1994) (citations and internal quotation marks omitted).[1] McDowell's conviction became final in 1989. *See McDowell v. California,* 490 U.S. 1059, 109 S.Ct. 1972, 104 L.Ed.2d 441 (1989) (denying petition for certiorari on direct appeal). A glimpse at the legal landscape reveals that never before has any court held that a judge must give a new supplemental instruction rather than refer

---

1. Neither McDowell nor the majority argues that the rule here falls within either of the two excep-

tions to *Teague.*

the jury to the relevant, legally correct instructions already given. Not in 1989; not ever until today. This fact alone may not be dispositive: Every case is different, and every case requires judges to patiently peruse the relevant case law and distill the right answer. If existing precedent compels the result—even if it's not spelled out in a single case—the state court must apply it. But the state court need not consult a crystal ball to figure out what rabbit the federal courts are next going to pull out of a hat.

The trial judge here could have set out on an eternal quest through the library stacks without discovering the grail which the majority heralds. The line of cases following *Bollenbach v. United States,* 326 U.S. 607, 612, 66 S.Ct. 402, 405, 90 L.Ed. 350 (1946), leads to an unremarkable conclusion: When a trial court responds to a jury's question, it cannot give an answer that is misleading, nonresponsive or legally incorrect.[2] This tells us nothing about a case where the court gives an instruction that is *correct.* The majority must therefore invoke *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982), which it does: *"Bollenbach* is not driving this case; *Eddings* is." *Maj. op.* at 841. The argument seems to be that because death is different, the usual assumption—that jurors will read, understand and follow legally correct instructions—is trumped by a new presumption of abiding stupidity.

Does *Eddings* really stand for this proposition? I can't find it anywhere in that opinion. The trial judge in *Eddings,* who was also the sentencer, ruled that he could not consider the defendant's troubled youth as a mitigating factor. *Eddings,* 455 U.S. at 109, 102 S.Ct. at 873–74. The Supreme Court reversed and held that the sentencer in a capital case must consider "any aspect of a defendant's character or record and any of the circumstances of the offense that the defendant proffers as a basis for a sentence less than death." *Id.* at 110, 102 S.Ct. at 874, quoting *Lockett v. Ohio,* 438 U.S. 586, 604, 98 S.Ct. 2954, 2964–65, 57 L.Ed.2d 973 (1978). The Court noted that the judge's misunderstanding of the law was tantamount to a legally incorrect instruction: "In this instance, it was as if the trial judge had instructed a jury to disregard the mitigating evidence Eddings proffered on his behalf." *Id.* at 114, 102 S.Ct. at 877. *Eddings* is about prohibiting consideration of mitigating evidence, not curing juror confusion.[3]

When McDowell's jury returned a note expressing confusion about mitigating factors, it may have been in the same position as the trial judge in *Eddings.* A fair reading of the note suggests the jury may not have

---

2. The key passage in *Bollenbach,* 326 U.S. at 612–13, 66 S.Ct. at 405, began by stating the obvious: "When a jury makes explicit its difficulties a trial judge should clear them away with concrete accuracy." *Bollenbach*'s holding, however, was not so abstract. The Court held that it was error to give a new instruction that was legally incorrect: "In any event, therefore, the trial judge had no business to be 'quite cursory' in the circumstances in which the jury here asked for supplemental instruction. But he was not even 'cursorily' accurate. He was simply wrong." *Bollenbach,* 326 U.S. at 613, 66 S.Ct. at 405.

The instructions in *United States v. Gordon,* 844 F.2d 1397, 1401 (9th Cir.1988), *United States v. Walker,* 575 F.2d 209, 213–14 (9th Cir.1978), *United States v. Bolden,* 514 F.2d 1301, 1308–09 (D.C.Cir.1975), *United States v. Petersen,* 513 F.2d 1133, 1135–36 (9th Cir.1975) and *Powell v. United States,* 347 F.2d 156, 157–58 (9th Cir. 1965) were all either misleading or nonresponsive. *See Gordon,* 844 F.2d at 1401 (holding that supplemental instruction must respond to jurors' question); *Walker,* 575 F.2d at 214 ("The problem is simply that the first supplemental instruc-

tion, when viewed in light of the jury's first question, is confusing[.]"); *Bolden,* 514 F.2d at 1308 (holding that rereading instruction was nonresponsive because "the problems raised by question one were not resolved by the court's further charge"); *Petersen,* 513 F.2d at 1135 (holding that supplemental instruction was "erroneous, misleading and contradictory"); *Powell,* 347 F.2d at 157–58 (holding that where question has two possible meanings, supplemental instruction which is responsive to one meaning but misleading as to the other is error). The last case on which the majority relies, *United States v. Warren,* 984 F.2d 325, 330 (9th Cir.1993), was decided after McDowell's conviction became final and cannot enter the *Teague* analysis.

3. The Supreme Court's later treatment of the case confirms that my colleagues are overreaching. For *Teague* purposes, the Court has explained, the rule of *Eddings* is simple: A state may not "impose[ ] an absolute prohibition against consideration of certain mitigating evidence by the sentencer." *Sawyer v. Smith,* 497 U.S. 227, 236, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990) (applying *Teague* ).

been considering the mitigating evidence the defendant had proffered. Did the trial court make the same legal mistake as the judge in *Eddings?* Did it effectively "instruct [the] jury to disregard the mitigating evidence [the defendant] proffered on his behalf?" Just the opposite. The trial court assiduously applied *Eddings* by referring the jury to the relevant instructions about mitigating evidence. The majority agrees that these instructions were technically flawless: The instructions directed the jury to consider "[a]ny other circumstance which extenuates the gravity of the crime even though it is not a legal excuse for the crime and any other aspect of the defendant's character or personal history that the defendant offers as a basis for a sentence less than death." *Compare Eddings,* 455 U.S. at 110, 102 S.Ct. at 874. Not only were the instructions absolutely correct, they incorporated the precise holding of *Eddings.*

*Eddings* said nothing at all about whether legally correct instructions can cure juror confusion about mitigating evidence. My colleagues in the majority implicitly acknowledge this when they summon their new rule from "shades of *Eddings.*"[4] But *Teague* works in black and white, not shades, penumbras, nuances or emanations. As the Supreme Court explained in *Sawyer:* "Even were we to agree with petitioner's assertion that our decisions in *Lockett* and *Eddings* inform, or even control or govern, the analysis of his claim, it does not follow that they compel the rule that petitioner seeks." *Sawyer v. Smith,* 497 U.S. 227, 236, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990) (internal quotation marks omitted). Here, as in *Sawyer,* no state court "considering the defendant's claim at the time his conviction became final would have felt *compelled by existing precedent* to conclude that the rule he seeks was required by the Constitution." *Caspari v. Bohlen,* 510 U.S. 383, 390, 114 S.Ct. 948, 953–54, 127 L.Ed.2d 236 (1994) (emphasis added) (citation omitted). Be-

cause the trial judge did all that *Eddings* required him to do, the rule the majority announces is new and may not be applied on habeas.

---

**4.** The majority notes that *Eddings* applied and confirmed principles of reliability in capital sentencing and holds that these principles dictate the result McDowell seeks. *See maj. op.* at 837–838. But the Supreme Court has squarely rejected this approach of framing the *Teague* inquiry at such a high level of abstraction: "In petitioner's view, [the rule sought] was dictated by the principle of reliability in capital sentencing. But the test would be meaningless if applied at this level of generality." *Sawyer v. Smith,* 497 U.S. 227, 236, 110 S.Ct. 2822, 2828, 111 L.Ed.2d 193 (1990).