# FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

LOUIS VUITTON MALLETIER, S.A.,
*Plaintiff-Appellee,*

v.

AKANOC SOLUTIONS, INC.; MANAGED
SOLUTIONS GROUP, INC.; STEVEN
CHEN,

*Defendants-Appellants.*

No. 10-15909

D.C. No.
5:07-cv-03952-JW

LOUIS VUITTON MALLETIER, S.A.,
*Plaintiff-Appellant,*

v.

AKANOC SOLUTIONS, INC.; MANAGED
SOLUTIONS GROUP, INC.; STEVEN
CHEN,

*Defendants-Appellees.*

No. 10-16015

D.C. No.
5:07-cv-03952-JW

OPINION

Appeal from the United States District Court
for the Northern District of California
James Ware, Chief District Judge, Presiding

Argued and Submitted
April 11, 2011—San Francisco, California

Filed September 9, 2011

Before: Alex Kozinski, Chief Judge, Michael Daly Hawkins
and Ronald M. Gould, Circuit Judges.

Opinion by Judge Gould

17239

## COUNSEL

J. Andrew Coombs (argued), Annie S. Wang, Glendale, California, for plaintiff-appellee-cross-appellant Louis Vuitton Malletier, S.A.

David A. Gauntlett, James A. Lowe (argued), and Raymond K. Chan, Irvine, California, for defendants-appellants Akanoc Solutions, Inc. and Steven Chen, and defendants-cross-appellees Managed Solutions Group, Inc.

## OPINION

GOULD, Circuit Judge:

Louis Vuitton Malletier, S.A., sued Managed Solutions Group, Inc. ("MSG"), Akanoc Solutions, Inc., and Steven Chen (collectively "Defendants")[1] for contributory copyright and trademark infringement, contending that Defendants were liable for their role in hosting websites that directly infringed Louis Vuitton's trademarks and copyrights. After a trial, a jury found Defendants liable and awarded damages against each defendant. In response to Defendants' motion for judgment as a matter of law, the district court set aside the jury's verdict and award against MSG. The district court otherwise denied the motion.

---

[1]For convenience, we refer throughout this opinion to the three defendants collectively as "Defendants" and to Akanoc and Chen as "Appellants." Defendant MSG is not an appellant, but is a cross-appellee.

Appellants Akanoc and Chen appeal the jury verdict, contending that the district court erred in instructing the jury and in denying their post-trial motion for judgment as a matter of law. Louis Vuitton cross-appeals the district court's order granting judgment as a matter of law in favor of MSG. We have appellate jurisdiction under 28 U.S.C. § 1291. Among other questions, we must decide whether the district court properly instructed the jury on awarding damages as to each defendant. Concluding that there was error, we vacate the damage awards and remand to the district court with instructions to enter an award consistent with this opinion. In all other respects, we affirm.[2]

## I.    Facts and Procedural History

Louis Vuitton is the sole and exclusive United States distributor of its merchandise, which includes a variety of luxury goods bearing its trademarks and copyrighted designs. To guard the reputation and exclusivity of its brand and to otherwise maintain its rights, Louis Vuitton polices its intellectual property, including its trademarks and copyrights, through various monitoring and enforcement strategies.

In late 2006, Louis Vuitton discovered websites selling goods that it believed infringed its copyrights and trademarks. The websites did not sell merchandise directly; instead, they listed an email address that interested parties could use to initiate a transaction. Upon further investigation Louis Vuitton discovered that the websites were using IP addresses assigned to defendants MSG and Akanoc.

---

[2]Appellant's unopposed motion for judicial notice of additional authorities is granted with respect to *Roadshow Films Pty. Ltd. v. iiNet Limited (No. 3)* (2010) 2010 FCA 24 (Austl.); H.R. Rep. No. 98-997 (1984); and S. Rep. No. 104-177 (1995), but denied with respect to the amicus brief filed by the Electronic Frontier Foundation, Public Citizen, and Public Knowledge in *Tiffany (NJ) Inc. v. eBay Inc.*, 600 F.3d 93 (2d Cir. 2010).

MSG and Akanoc were in the "web hosting" business. Chen managed both MSG and Akanoc, which were based in San Jose, California. According to Defendants, MSG leased servers, bandwidth, and some IP addresses to Akanoc. Akanoc, in turn, operated the servers and otherwise ran the business.[3] Akanoc leased packages of server space, bandwidth, and IP addresses to its customers.[4] Some of Akanoc's customers were located outside the United States. According to Louis Vuitton, the customers who directly infringed the trademarks and copyrights were based in China.

From 2006 to 2007, Louis Vuitton sent Defendants at least eighteen Notices of Infringement ("NOIs") documenting trademark and copyright infringement occurring on numerous websites hosted by Defendants. The NOIs demanded that Defendants either remove the infringing content from their servers or require their customers to do so. Louis Vuitton received no response from Defendants. Although Defendants asserted that they took regular steps to curb any infringement by websites using their servers, Defendants were not able to identify any action taken in response to the notices sent by Louis Vuitton, and the websites continued to operate using servers and IP addresses owned by Defendants.

Louis Vuitton sued Defendants in the Northern District of California, alleging contributory copyright and trademark infringement under federal law. Louis Vuitton contended that Defendants had actual knowledge of the websites' activities, that Defendants knowingly avoided learning the full extent of the infringing activities and deliberately disregarded Louis Vuitton's notifications, that Defendants knowingly enabled the infringing conduct by hosting the websites and willfully

---

[3]Louis Vuitton disputes this characterization, but presented no evidence at trial that MSG's role extended beyond ownership and leasing of assets.

[4]According to Akanoc, many of these customers acted as "resellers" who sold Akanoc's services to third parties. Even if true, that fact would not alter our analysis.

permitting websites to display the products, and that Louis Vuitton suffered irreparable harm and damage as a result of Defendants' conduct.

The case went to trial and the jury returned a verdict for Louis Vuitton, holding Akanoc, MSG, and Chen liable for contributory infringement of thirteen of Louis Vuitton's trademarks, and of two of Louis Vuitton's copyrights. The jury also found that Defendants acted willfully. The jury awarded $10,500,000 in statutory damages for willful contributory trademark infringement of the thirteen trademarks against each defendant, for a total of $31,500,000. The jury also awarded $300,000 in statutory damages for willful copyright infringement of the two copyrights against each defendant, for a total of $900,000.

After the verdict, Defendants moved for judgment as a matter of law, requesting among other things that the court discard the jury verdict. The district court granted the post-trial motion as to MSG, concluding that there was no evidence indicating that MSG sold domain names, operated the servers, or did anything more than own and lease the hardware operated by Akanoc and Chen. The district court denied the motion as to Akanoc and Chen, awarded statutory damages, and entered a permanent injunction restricting them from engaging in similar conduct. Akanoc and Chen timely appealed. Louis Vuitton cross-appealed the district court's order granting judgment as a matter of law in favor of MSG.

## II.   Standards of Review

We review de novo whether jury instructions misstate the law. *Wall Data Inc. v. L.A. Cnty. Sheriff's Dep't*, 447 F.3d 769, 784 (9th Cir. 2006). We review the district court's formulation of jury instructions for abuse of discretion. *Id*. We have consistently held that "an error in instructing the jury in a civil case does not require reversal if the error was 'more probably than not harmless.' " *Lambert v. Ackerley*, 180 F.3d

997, 1008 (9th Cir. 1999) (en banc) (quoting *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1337 (9th Cir. 1985)).

We review de novo a district court's decision to grant or deny judgment as a matter of law. *Mangum v. Action Collection Serv., Inc.*, 575 F.3d 935, 938 (9th Cir. 2009).

## III.   Discussion

### A.   The Cross-Appeal

**[1]** Louis Vuitton contends that the district court erred when it set aside the jury's verdict against MSG. We disagree. The jury's verdict as to MSG was not supported by "substantial evidence." *See Johnson v. Paradise Valley Unified Sch. Dist.*, 251 F.3d 1222, 1227 (9th Cir. 2001) ("Substantial evidence is evidence adequate to support the jury's conclusion. . . .").

**[2]** With regard to both contributory copyright and trademark infringement, the district court's verdict form asked the jury to determine whether each defendant, while knowing that its customers were using its services to directly infringe Louis Vuitton's intellectual property rights, "had reasonable means to withdraw its services so that they could not be used to directly infringe but continued to provide its services." We agree with the district court that no evidence presented at trial showed that MSG operated the servers that hosted the direct infringers' websites. Even assuming that the direct infringers could be construed as MSG's customers, Louis Vuitton presented no evidence that MSG had reasonable means to withdraw services to the direct infringers.

### B.   Appellants' Motion for Judgment as a Matter of Law

**[3]**  Appellants Akanoc and Chen urge that the district court erred in denying their post-trial motion for judgment as a matter of law. But Appellants give no reasoned argument to sup-

port their one-sentence conclusory assertion. It would be permissible to conclude that this issue is not properly presented, and as a consequence to decline to review it. *See United States v. Loya*, 807 F.2d 1483, 1486-87 (9th Cir. 1987) ("Issues raised in a brief which are not supported by argument are deemed abandoned."); *Leer v. Murphy*, 844 F.2d 628, 634 (9th Cir. 1988) ("We will only review an issue not properly presented if our failure to do so would result in manifest injustice."). However, in reviewing the particular issues of substantive law raised by Appellants as described below, we have concluded that the jury had sufficient facts before it to find Appellants liable as a matter of law, and therefore the district court did not err in denying Appellants' motion for judgment as a matter of law.

## C.   Jury Instructions

### 1.   Contributory Trademark Infringement

To prevail on its claim of contributory trademark infringement, Louis Vuitton had to establish that Appellants continued to supply its services to one who it knew or had reason to know was engaging in trademark infringement." *Inwood Labs., Inc. v. Ives Labs., Inc.*, 456 U.S. 844, 854 (1982). Because Appellants provided services rather than a product, Louis Vuitton also needed to establish that Appellants had "[d]irect control and monitoring of the instrumentality used by a third party to infringe" Louis Vuitton's marks. *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 984 (9th Cir. 1999) (holding that the court must consider "the extent of control exercised by the defendant over the third party's means of infringement").

**[4]** Appellants contend that the district court did not instruct the jury about the proper scope of the "means of infringement." According to Appellants, the servers and internet services they provided and operated were not the "means of infringement"; instead, they maintain, the websites selling

the infringing goods were the sole means of infringement. Appellants claim that the jury instructions failed to distinguish between the servers or services provided by Appellants and the websites maintained by Appellants' customers. But websites are not ethereal; while they exist, virtually, in cyberspace, they would not exist at all without physical roots in servers and internet services. As the district court held, Appellants "physically host websites on their servers and route internet traffic to and from those websites. This service is the Internet equivalent of leasing real estate." *Louis Vuitton Malletier, S.A. v. Akanoc Solutions, Inc.*, 591 F. Supp. 2d 1098, 1112 (N.D. Cal. 2008). Appellants had control over the services and servers provided to the websites. Stated another way, Appellants had direct control over the "master switch" that kept the websites online and available. The district court did not abuse its discretion by formulating jury instructions that referred to the servers and services provided by Appellants.[5] *See Wall Data Inc.*, 447 F.3d at 784.

**[5]** Appellants also contend that the jury instructions were erroneous because, in their view, "contribution to infringement must be intentional for liability to arise." We disagree. Plaintiffs asserting contributory trademark infringement claims must prove that defendants provided their services with actual or constructive knowledge that the users of their services were engaging in trademark infringement. *See Inwood Labs.*, 456 U.S. at 854; *Perfect 10, Inc. v. Visa Int'l*

---

[5]It is not clear whether Appellants also challenge the district court's instruction on the ground that it did not require the jury to find "monitoring" in addition to "direct control." *Lockheed*, 194 F.3d at 984. Because that question was not clearly presented in Appellants' briefs, we need not discuss it here. Moreover, any error in the formulation of the jury instructions with respect to the "monitoring" element was harmless given the jury's finding that Appellants willfully contributed to direct trademark infringement.

*Serv. Ass'n*, 494 F.3d 788, 807 (9th Cir. 2007). An express finding of intent is not required.[6]

## 2. Contributory Copyright Infringement

Appellants claim the jury instructions on contributory copyright infringement were erroneous because they "omitted both the elements of intent and material contribution." Although we agree that the instructions deviated from the Ninth Circuit Model Jury Instructions, we reject Appellants' arguments. *See McDowell v. Calderon*, 130 F.3d 833, 840 (9th Cir. 1997) (explaining that model jury instructions are not "blessed with any special . . . precedential authority").

**[6]** We have never held that an express finding of intent is necessary to support liability for contributory copyright infringement. To the contrary, we have held that "intent may be imputed" as a result of "a service provider's knowing failure to prevent infringing actions." *Amazon.com*, 508 F.3d at 1172. The district court was not required to instruct the jury, as Appellants suggest, to make a separate finding that Appellants' knowing action evinced intent to contribute to copyright infringement. *See A&M Records, Inc. v. Napster*, 239 F.3d 1004, 1020 (9th Cir. 2001) ("Contributory liability requires that the secondary infringer 'know or have reason to know' of direct infringement."). Appellants also argue that the jury instructions should have required an express finding of material contribution. We disagree.

---

[6]Appellants also contend that the jury instructions erroneously allowed the jury to find willful contributory infringement based on Appellants' intent that others infringe Louis Vuitton's trademarks. This argument fails because it is premised on the idea, which we reject, that *non*-willful contributory infringement requires a finding of intent. Thus, even if intent *were* an element of contributory trademark infringement, Appellants do not explain why the district court's failure to include it in its instructions was not harmless in light of the jury's finding that Appellants willfully contributed to direct infringement.

**[7]** Material contribution turns on whether the activity in question "substantially assists" direct infringement. *Amazon.com*, 487 F.3d at 729. There is no question that providing direct infringers with server space satisfies that standard. In *Visa*, 494 F.3d at 799-800, we held as a matter of law that defendants did not materially contribute to infringement because "[t]hey d[id] not operate the servers on which [the infringing images] reside[d]." The opposite is true here. Akanoc's servers are "an essential step in the infringement process." *Id.* at 812 (Kozinski, C.J., dissenting). The district court did not err by narrowing the instruction on material contribution to the only genuine question as to that element— whether Appellants provided their services to direct infringers. *See also Napster*, 239 F.3d. at 1022 (holding that "Napster materially contribute[d] to the infringing activity" because, "[w]ithout the support services defendant provides, Napster users could not find and download the music they want with the ease of which defendant boasts" (internal quotation marks removed) (alteration in original)).**7**

**[8]** Appellants further contend that the jury instructions erroneously allowed the jury to find that Appellants engaged in willful infringement based solely on a finding of knowing contribution to direct infringement. Appellants object that under this formulation, a finding of willfulness requires proof of no element beyond those of contributory copyright infringement. But appellants do not explain what additional element should be required. The district court's formulation accurately reflected the law. "[A] finding of 'willfulness' in [the copyright] context can be based on either 'intentional' behavior, or merely 'reckless' behavior." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008). "To prove 'willfulness' under the Copyright Act, the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that

---

**7**We also reject Appellants' challenges to the sufficiency of the evidence. The jury heard substantial evidence that Appellants knowingly provided their services to direct infringers.

the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 263 (2d Cir. 2005).

## D.   Damages

### 1.   Contributory Trademark Infringement

#### a.   Statutory Damages

**[9]** Appellants contend that 15 U.S.C. § 1117(c) does not authorize statutory damages against contributory infringers. Section 1117(c) provides for statutory damages for the use of counterfeit marks:

> In a case involving the use of a counterfeit mark . . . in connection with the sale, offering for sale, or distribution of goods or services, the plaintiff may elect, at any time before final judgment is rendered by the trial court, to recover, instead of actual damages and profits under subsection (a) of this section, an award of statutory damages for any such use in connection with the sale, offering for sale, or distribution of goods or services in the amount of—
>
> (1) not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just; or
>
> (2) if the court finds that the use of the counterfeit mark was willful, not more than $2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just.

15 U.S.C. § 1117(c). Appellants assert that statutory damages cannot be awarded against contributory infringers because the

statute defines infringement in terms of the unauthorized "use" of a counterfeit mark. But § 1117(c) does not require defendants to "use . . . [the] counterfeit mark." It applies so long as the "case *involves* such use." *Id.* (emphasis added). At bottom, Appellants urge us to hold that a defendant may avoid the consequences of contributory liability (i.e., statutory damages) simply by claiming that the infringing acts (the unauthorized uses) were committed by others. But holding a defendant liable for the unauthorized acts of another is a primary purpose of the doctrine of contributory trademark liability.

Appellants contend that § 1117, read "as a whole," lays out "an integrated scheme" for recovery of damages. Under Appellants' proposed reading of the statute, damages for contributory infringement involving the use of a counterfeit mark may only be awarded under § 1117(b), which requires courts "assessing damages under subsection (a)" to treble the award if the violation consists of "providing goods or services necessary" to the commission of an intentional, knowing use of a counterfeit mark. § 1117(b)(2). Appellants ignore, however, that "a plaintiff may eschew actual damages under § 1117(a) and elect to seek statutory damages under § 1117(c)." *K&N Eng'g, Inc. v. Bulat*, 510 F.3d 1079, 1082 (9th Cir. 2007).

### b.    Likelihood of Confusion

**[10]** The district court instructed the jury that "[t]here is a likelihood of confusion . . . when the offending mark is a counterfeit mark, or a mark virtually identical to a previously registered mark coupled with the intent to pass off or borrow from established good will." Appellants urge that this instruction misstates the law. They cite our decision in *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, where we held "that proof of intent to cause confusion is entitled to *great weight*, not that it creates a presumption of confusion that shifts the burden of proof to the other party." 150 F.3d 1042, 1052 n.11 (9th Cir. 1998) (citing *Fuddruckers, Inc. v. Doc's*

*B.R. Others, Inc.*, 826 F.2d 837, 844-45 (9th Cir. 1987)). But the district court's instruction specified that the presumption arises when intent to cause confusion is coupled with the use of a counterfeit mark or a mark virtually identical to a previously registered mark. This formulation accurately tracks the law. We have approvingly cited Judge Learned Hand's formulation of the presumption:

> [T]he late comer who deliberately copies the dress of his competitors already in the field, must at least prove that his effort has been futile . . . . He may indeed succeed in showing that it was; that, however bad his purpose, it will fail in execution; if he does, he will win . . . . But such an intent raises a presumption that customers will be deceived.

*HMH Publ'g Co. v. Brincat*, 504 F.2d 713, 720 n.12 (9th Cir. 1974) (quoting *My-T-Fine Corp. v. Samuels*, 69 F.2d 76, 77 (2d Cir. 1934)). *See also Brookfield Commc'ns, Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1056 (9th Cir. 1999) ("In light of the virtual identity of marks, if they were used with identical products or services likelihood of confusion would follow as a matter of course.").

### c.   Definition of "Counterfeit Mark"

**[11]** To claim statutory damages under 15 U.S.C. § 1117(c), Louis Vuitton had to prove that the goods trafficked by the direct infringers were "counterfeit" as that term is defined in § 1116(d). Section 1116(d) specifies that a counterfeit mark for purposes of § 1117(c) is "a counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." § 1116(d)(1)(B)(i). Appellants contend that the district court erred because the jury instructions did not define the term "counterfeit mark."

**[12]** This contention has no merit. Section 1116(d) requires that the mark in question be (1) a non-genuine mark identical to the registered, genuine mark of another, where (2) the genuine mark was registered for use on the same goods to which the infringer applied the mark, *Idaho Potato Comm'n v. G & T Terminal Packaging, Inc.*, 425 F.3d 708, 721 (9th Cir. 2005). The district court's Closing Instructions and Supplemental Instruction Number 1 adequately explained this requirement.

**[13]** Appellants further urge that there was no evidence to support a finding that six of the marks were counterfeit. We reject this challenge to the sufficiency of the evidence. Substantial evidence supports the jury's verdict. *See Johnson*, 251 F.3d at 1227 ("A jury's verdict must be upheld if it is supported by substantial evidence.").

## 2.   The Damage Awards

Under 17 U.S.C. § 504(c), the statutory maximum for willful copyright infringement is $150,000 "for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." Under 15 U.S.C. § 1117(c)(2), the statutory maximum for willful trademark infringement involving counterfeit marks now is $2,000,000 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." But the statutory maximum at the outset of litigation in this case was $1,000,000, not $2,000,000, and the parties agreed to abide by the lower amount. The jury awarded statutory damages of $10,500,000 per defendant for willful contributory infringement of thirteen of Louis Vuitton's trademarks and $300,000 per defendant for willful contributory infringement of two of Louis Vuitton's copyrights. §§ 504(c), 1117(c)(2). The district court held that these awards did not violate the statutory maximums, noting that the total award "amounts to approximately $807,692 per

trademark per Defendant and $150,000 per copyright per Defendant." The court did not specify whether the awards were separate awards for which Appellants were separately liable, or if Appellants were jointly and severally liable for the full amount.

**[14]** With respect to copyright, "when statutory damages are assessed against one defendant or a group of defendants held to be jointly and severally liable, each work infringed may form the basis of only one award, regardless of the number of separate infringements of that work." *Columbia Pictures Television v. Krypton Broad. of Birmingham, Inc.*, 106 F.3d 284, 294 (9th Cir. 1997), *rev'd on other grounds*, *Feltner v. Columbia Pictures Television, Inc.*, 523 U.S. 340 (1998)). Statutory damages for copyright infringement are authorized by 17 U.S.C. § 504(c), but the text of the statute specifies that a successful plaintiff may receive "an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally." § 504(c)(1). The committee notes clarify:

> Where the infringements of one work were committed by a single infringer acting individually, a single award of statutory damages would be made. Similarly, where the work was infringed by two or more joint tortfeasors, the bill would make them jointly and severally liable for an amount in the [statutory] range. However, where separate infringements for which two or more defendants are not jointly liable are joined in the same action, separate awards of statutory damages would be appropriate.

17 U.S.C. § 504, Notes of Committee on the Judiciary, H.R. Rep. No. 94-1476 (1976). Stated another way, a plaintiff may receive a single statutory award for all infringements of any one copyrighted work from either (1) any one defendant,

where that defendant is separately liable or (2) multiple defendants, where those defendants are jointly and severally liable.

**[15]** The verdict form invited the jury to specify a separate statutory damage award against *each* defendant, and then to calculate the total amount of the award for copyright damages. In the absence of further guidance explaining the statutory requirement, this was error. There was no legal basis for multiplying the award by the number of defendants. *Cf.* 18 C.J.S. *Copyright* § 127 (2011) ("Only a single award of statutory damages within the statutory limits may be made for all infringements involved in the action with respect to any one work, except where multiple defendants are not jointly liable.") (footnotes omitted). As Appellants point out, the district court's total award for copyright infringement is $600,000 for two copyrighted works, an amount that is double the statutory maximum of $150,000 per work. Statutory damages reach a maximum based on the number of protected works, not the number of defendants.

**[16]** With respect to damages for contributory trademark infringement, logic compels the same result. Like 17 U.S.C. § 504(c), 15 U.S.C. § 1117(c) entitles a plaintiff to *an* award, not multiple awards. A learned treatise counsels that "[t]he body of case law developed to interpret the similar statutory damages provision in copyright law should prove helpful in applying the counterfeit statutory damages option." J. Thomas McCarthy*, McCarthy on Trademarks & Unfair Competition* § 30:95 (4th ed. 1996) (footnotes omitted). Louis Vuitton cites no authority to the contrary. When combined, the awards of $10,500,000 per defendant exceed the statutory maximum.

**[17]** Because it is clear from the jury verdict form that the jury found each defendant liable for $10,500,000 in calculated statutory damages for contributory trademark infringement and $300,000 in calculated statutory damages for contributory copyright infringement, a new trial on the issue of damages is unnecessary. Instead, the damages as established by the

jury may be implemented by making Akanoc and Chen jointly and severally liable for single awards in those amounts.

### E.    Conclusion

For the reasons expressed above, we affirm the district court on all issues of liability raised by the appeal and cross-appeal. But we vacate the judgment and remand with instructions that the district court award statutory damages in the amount of $10,500,000 for contributory trademark infringement and $300,000 for contributory copyright infringement, for which Akanoc and Chen shall be jointly and severally liable. The parties shall bear their own costs.

**VACATED AND REMANDED WITH INSTRUCTIONS.**